# Exhibit A

Clerk of the Superior Court
*** Electronically Filed ***
A. Nasui, Deputy
2/3/2026 5:44:45 PM
Filing ID 21407232

Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.5169
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

**IN THE MARICOPA COUNTY SUPERIOR COURT**

| | |
|---|---|
| Little Joe Lageman, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PHOENIX, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; ADRIAN NICOLAS ORTIZ SAMANIEGO and JANE DOE SAMANIEGO, a married couple; DIEGO SANTANA and JANE DOE SANTANA, a married couple; OFFICER RODRIGUEZ # 10345 and JANE DOE RODRIGUEZ, a married couple; and, JOHN AND JANE DOES I-X,<br><br>Defendants | Case No.:   **CV2026-004816**<br><br>**PLAINTIFF'S COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiff, by and through his attorneys, Mills + Woods Law, PLLC, for his Complaint against the CITY OF PHOENIX, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; Adrian Nicolas Ortiz Samaniego ("Samaniego") and Jane Doe Samaniego; Diego Santana ("Santana") and Jane Doe Santana; Officer Rodriguez Badge # 10345 ("Rodriguez") and Jane Doe Rodriguez (collectively "Defendants"), hereby alleges as follows:

**JURISDICTION AND VENUE**

1.      Pursuant to 42 U.S.C. §1983 *et seq.*, Plaintiff brings this action for violations of the United States Constitution, including without limitation the Eighth and Fourteenth

Amendments and Arizona common and statutory laws.

2. The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3. To the extent applicable, and without conceding that said statute applies, Plaintiff has served their Notice of Claim upon Defendants in compliance with A.R.S. §12-821.01, *et seq.* More than sixty (60) days have expired since Plaintiffs served their Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

4. Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this Complaint because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Maricopa County, Arizona.

5. Venue is proper in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

**PARTIES**

6. At all relevant times in this Complaint, Plaintiff Little Joe Lageman ("Plaintiff" or "Little Joe" or "Lageman") was an individual residing in Maricopa County, Arizona.

7. Defendant CITY OF PHOENIX is a governmental entity that acts by and through its officials, employees, and agents, including without limitation the Phoenix Police Department, and each of the other Defendants in this action.

8. Defendant MICHAEL SULLIVAN is the Chief of the Phoenix Police Department and is sued in his official and individual capacity. He is tasked with oversight of the Phoenix Police Department and is responsible for all policies and procedures promulgated by the Phoenix Police Department. He is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

9. Defendant Adrian Nicolas Ortiz Samaniego is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

2

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

10.     Defendant Diego Santana is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

11.     Defendant Officer Rodriguez Badge # 10345 is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

12.     The Samaniego, Santana, and Rodriguez Defendants are collectively referred to as the Phoenix Defendants.

13.     The City of Phoenix is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Phoenix Police Department (the "City") and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, Defendants were acting within the course and scope of their employment or contract with Phoenix - or entities privately contracted with Phoenix.

14.     For purposes of Plaintiffs' claims arising under Federal law, including without limitation the United States Constitution and 42 U.S.C. §1983 *et seq.*, and as may be relevant to Plaintiff's state law claims, at all relevant times described herein, Defendants were acting under color of state law.

15.     Defendants JANE DOE SAMANIEGO; JANE DOE SANTANA; and JANE DOE RODRIGUEZ are included as Defendants because the Phoenix Defendants were acting for the benefit of their respective marital communities, if any, and therefore the respective marital communities, if any, are liable for their actions as set forth herein.

16.     Each of the Defendants failed to do what is minimally required of them by the United States Constitution, and the laws of the State of Arizona, relative to the care, custody and control of Little Joe Lageman.

17.     By failing in these obligations, Defendants were deliberately indifferent to Lageman's rights guaranteed him by the United States Constitution and the State of Arizona.

18. As a result of Defendants' deliberate indifference and as a result of intentional acts and omissions to act that fell below the proscribed standard of care – through failures to properly supervise; properly carry out their job duties; and to properly administer medical attention – Lageman suffered immense pain and suffering and injuries to his person.

## BACKGROUND

19. On June 13, 2024 – less than three (3) months following the injuries sustained by Lageman, The USDOJ Civil Rights Division issued a 126-page report titled "Investigation of the City of Phoenix and the Phoenix Police Department" (the "Report").[1]

20. The Report's Executive Summary states:

On August 5, 2021, the Department of Justice opened a pattern or practice investigation of the Phoenix Police Department (PhxPD) and the City of Phoenix ("the City" or "Phoenix"). Our investigation revealed systemic problems within PhxPD that deprive people of their rights under the Constitution and federal law. ***We found pervasive failings in PhxPD's policies, training, supervision, and accountability systems that have disguised and perpetuated these violations for years.***
(emphasis added)

21. On the USDOJ website and in the Report, it is explicitly stated that "the Department finds that: PhxPD uses excessive force, including unjustified deadly force and other types of force."[2]

22. Chief Sullivan was appointed interim Chief in July 2022.

23. According to the Report, Chief Sullivan has started implementing certain reforms, including updates to PhxPD's use-of-force policy and training. "I saw some uses of force that made me think that we need to do something different," he told Justice Department investigators.

24. To determine the pattern and practice analysis, the Report cites to 34 U.S.C. § 12601; *see also* 42 U.S.C. § 12101 et seq. A pattern or practice exists where violations

---

[1] Retrieved October 4, 2024 from https://www.justice.gov/crt/media/1355866/dl?inline

[2] Retrieved October 4, 2024 from https://www.justice.gov/opa/pr/justice-department-finds-civil-rights-violations-phoenix-police-department-and-city-phoenix

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

are repeated rather than isolated. *Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 336 n.16 (1977). A pattern or practice does not require the existence of an official policy or custom. *United States v. Colorado City*, 935 F.3d 804, 810 (9th Cir. 2019).

25.    The report also found that Phoenix Police's training and weak oversight contribute to the pattern of excessive force, specifically finding that "PhxPD training has mischaracterized the law and encouraged immediate and indiscriminate force, which predictably results in excessive force. Many of the problematic practices we saw originated with PhxPD training. Despite systems for oversight and review, PhxPD's chain of command approved nearly all use-of-force incidents, including those described above." *Id.* at 35.

26.    The report found that:

PhxPD also has trained officers to use serious force to respond to hypothetical, not actual, danger. For example, in a training for all supervisors at a station, PhxPD showed a video of an incident in which an officer shot a man carrying a knife with a 40mm round. Although the man was on a deserted street in downtown Phoenix at 2:45 a.m., trainers said the force was reasonable because there "was an element of jeopardy." The jail was across the street and people "could be" released at any time. Trainers have also taught officers to fire Tasers and 40mm projectiles against a person in a behavioral health crisis if the person does not comply with commands, whether or not the person presents a threat. The mindset that a theoretically possible future threat, however unlikely, justifies immediate force violates the Fourth Amendment.

*Id.*

27.    The USDOJ report continues:

Phoenix has trained its officers that all force—even deadly force—is de-escalation. This attitude runs contrary to the basic principles of de-escalation, which offers strategies, such as time, distance, cover, and verbal persuasion, to help a person voluntarily comply with officers without the need to use force or to lessen the force needed. 34 PhxPD officers have been trained to "use escalation to de-escalate the situation" as quickly as possible. One trainer suggested immediate force stops a situation "before you really have to hurt someone," and explained that "de-escalation, like talking nice, will get someone killed." In practice, this translates to quickly using unreasonable force, often without considering whether any force is necessary at all.

Indeed, in some trainings we observed, trainers encouraged officers to use

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

force without warning or just seconds after arriving at a scene, regardless of whether the person presented an apparent risk to officers or others.

*Id.* at 36.

28.     The USDOJ report details more training that is unconstitutional:

Similarly, PhxPD has taught officers that it is appropriate to fire projectiles at people who are not following commands but pose no threat. Indeed, 40mm operators have been trained they can fire when faced with "passive resistance," such as when a person is defiant in response to commands, but not aggressive. For example, in a role-playing training we observed, officers stopped a driver on suspicion of assault. The actor got out of his car with his hands up but did not follow the trainee's directions and was moving around and yelling. Eventually, the trainee shot the actor with a 40mm round. During the debrief, instructors told the trainee that he should have taken more decisive action and fired the moment the actor did not comply with a command.

*Id.* at 37.

29.     The Report found that there are several patterns that Phoenix Police use that violate constitutional rights:

PhxPD uses unconstitutional deadly force. We identified several patterns:

•     First, officers violate the Constitution when they fire their weapons at people who present no immediate threat of harm, and they continue to shoot at people after they are no longer a threat.

•     Second, officers shoot when their own actions have created or greatly magnified the risk they face. We identified unconstitutional shootings that likely could have been avoided absent officers' reckless tactics.

•     Third, officers unreasonably delay rendering aid to people they have shot, and at times use significant, unreasonable force against people who are already incapacitated, sometimes even unconscious, as the result of police gunfire.

*Id.* at 14.

30.     The Report further found that "[f]or big city police departments, PhxPD has one of the highest rates of fatal shootings in the country per year. PhxPD typically reports more than 20 police shootings each year and sometimes significantly exceeds that number." *Id.* at 15.

31. The Report, under a heading entitled "PhxPD Officers Fire Their Guns at People Who Present No Immediate Threat" found that:

> PhxPD officers fail to properly assess whether to shoot once they see a person holding a weapon, even when the person presents no immediate threat.
>
> * * *
>
> At times, officers continue to shoot after any threat has ended. Under the Fourth Amendment, justification for deadly force, or any force, may end after the first gunshot. "[T]erminating a threat doesn't necessarily mean terminating the suspect. If the suspect is on the ground and appears wounded, he may no longer pose a threat; a reasonable officer would reassess the situation rather than continue shooting" *Zion v. Cty. of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017).

*Id.* at 16. (emphasis added)

32. The Phoenix Police Department and the City authorized customs, policies, patterns and practices that are unconstitutional.

33. These customs, policies, patterns and practices were utilized in the Phoenix Defendants' response to Lageman.

34. The three patterns the USDOJ found above are exactly the patterns that were used against Lageman.

35. For example, Lageman presented no immediate threat of harm, but the Phoenix Defendants utilized force as their first resort/response.

36. The Phoenix Defendants recklessly approached the scene – they ignored Lageman's responses.

37. They yelled multiple conflicting commands to Lageman causing him confusion as to where to put his hands or how to position his body.

38. Each of those practices fell exactly in line with the patterns of unconstitutional behavior that the USDOJ found.

## FACTUAL ALLEGATIONS

39. On March 29, 2024, Lageman was walking from his mother-in-law's house to his church to speak with his grandmother.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

40.    He was less than one minute away from the church. Out of nowhere, a police vehicle driven aggressively by an amped-up Officer Santana pulled up and stopped while Officer Santana jumped out of the driver's seat.

41.    Two minutes earlier, Santana had arrived at a hit and run scene. A suspect was described by the complainant as a Hispanic male with black hair 5' 8" 160 pounds wearing a black shirt.

42.    He radioed over dispatch that he didn't have the male out in this area.

43.    They knew the vehicle. They had all the information about the owner of the vehicle and where the vehicle was registered.

44.    Instead of pulling that information – which would have given them the information for the person who actually committed the hit and run – Santana decided to throw caution to the wind.

45.    Lageman was 6'0" 140 pounds at the time. He is Hispanic. He was wearing a black hoodie.

46.    Santana raced away and saw a person to the left of his vehicle and had a short conversation with him. He then raced away again.

47.    This time, seeing Lageman, he was ready to attack. After Santana jumped out of his driver seat, he only asked one question: "where are you coming from?"

48.    Lageman told him he was "walking, bro".

49.    Santana approached Lageman and said we are looking for someone that is walking in this area.

50.    Lageman repeated that he was "walking bro" but beginning to fear for his life, he put his hands in the air.

51.    Lageman immediately told Santana that he had a gun on him and showed Santana with a nod – while keeping his hands in the air – that it was in his right pant pocket.

52.    Santana then asked Lageman to put his hands on his head.

53.    Then he told Lageman to face away from him.

54.    Lageman asked why he had to face away from him.

55.    Santana then instructed him to put his hands on his head.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

56.    Santana then drew his firearm and pointed it at Lageman.

57.    Lageman told him he wasn't doing anything. Lageman again told Santana that his hands were up and that his gun was right there in his pocket – visible to Santana.

58.    Notably, Santana did not tell Lageman he was under arrest, nor did he ask Lageman for any identification.

59.    Santana then began giving conflicting directives to Lageman to either put his hands up or on his head.

60.    Lageman was clearly scared and confused by the changing orders.

61.    Officer Santana was clearly pumped full of adrenaline, tripping over his words – at one point even telling Lageman to put his gun on his head.

62.    Lageman then put his hands on his head.

63.    Then, Santana yelled at him to go on his knees.

64.    Lageman showed him his hands were locked together on his head.

65.    He then went on his knees and Santana said great that's all I wanted from you.

66.    Then Santana immediately yelled for Lageman to get on his stomach.

67.     Lageman asked how he can go on his stomach with his hands on his head.

68.    Then Santana yelled for him to put his hands on the floor.

69.    Lageman offered for another officer to come grab his gun.

70.    Officers then suggested that they get the pepper ball launcher. Lageman was able to go on his stomach.

71.    After having their handguns pointed at Lageman during this whole time, officers Santana, Rodriguez, and Samaniego then tackled Lageman, slammed his head into the pavement, put their knees on his back, and pushed his face into the concrete, chipping his tooth.

72.    Lageman did not resist, allowing himself to be handcuffed.

73.    The video shows this.

74.    The written reports say otherwise – they are rife with statements that Lageman was actively resisting arrest the entire time.

9

75.    Lageman was put into the police vehicle with the officers on scene laughing at him and making pejorative comments about "having a smart one".

76.    In Santana's report he wrote that before his encounter with Lageman while he was still at the accident scene that:

> I PERCEIVED AN EERIE FEELING AND BASED ON THE INFORMATION AT THAT TIME, THAT THE COMPLAINANT'S VEHICLE WAS CRASHED INTO, THE SUSPECT HAD A GUN AND APPEARED INTOXICATED, AND IT WAS UNDETERMINED WHAT HIS MINDSET WAS. BASED ON THE TOTALITY OF THE CIRCUMSTANCE I FEARED FOR THE PUBLIC'S SAFETY AND SHIFTED MY PRIORITY OF SAFETY.

77.    All of this happened because Santana based his investigation on an EERIE FEELING.

78.    Lageman was charged with Leaving the scene of an accident-unattended vehicle, a class 1 misdemeanor, and with Resisting Arrest, a class 1 misdemeanor.

79.    At no time in the Incident did Lageman resist arrest.

80.    At no time in the Incident did Lageman threaten any officers.

81.    It should not be surprising to find out that Lageman was not involved in any way in the hit and run accident that night.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

10

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

82.     On the left, a Mr. Kris Cardenas who lived at the house the Black Silverado was registered at. On the right, Mr. Lageman:



83.     Lageman told the officers, the deputies, the court, and the prosecutors over and over that he was not the person they were looking for.

84.     Despite this, Lageman spent: Five days in jail for crimes he did not commit and over one year fighting his charges – for crimes he did not commit.

85.     The Phoenix Defendants pressed forward, even knowing that Lageman was not the person they were looking for.

86.     They submitted charges, allowed them to move forward, only to ultimately lose when the prosecutor realized that everything Lageman had told them was true.

87.     Starting from the Incident through the dismissal, the Phoenix Defendants acted with malice, ignored Lageman's rights, violated his rights, and pushed a case against Lageman.

88. Samaniego's Probable Cause Statement contains the following:

ON 3/29/3024 AT 1949 HOURS, OFFICERS RESPONDED TO EMERGENCY RADIO TRAFFIC REFERENCING A HIT AND RUN ACCIDENT THAT POSSIBLY INVOLVED A GUN. PRIOR TO POLICE ARRIVAL, THE VICTIM PROVIDED A DESCRIPTION OF THE

SUBJECT LEAVING THE VEHICLE THAT CAUSED THE ACCIDENT AND STATED THAT HE SAW HIM REACH INTO THE VEHICLE AND POSSIBLY GRABBED A GUN.

OFFICERS SUBSEQUENTLY SPOTTED AN INDIVIDUAL, THE DEFENDANT, SEVERAL HOUSES DOWN WALKING EASTBOUND ON SELLS DR THAT MATCHED THE DESCRIPTION THE VICTIM HAD PROVIDED.

OFFICERS SUBSEQUENTLY CONTACTED THE DEFENDANT AND ADVISED HIM TO STOP. OFFICERS NOTICED THAT THE DEFENDANT HAD A BLACK HANDGUN IN HIS RIGHT FRONT POCKET. OFFICERS GAVE SEVERAL COMMANDS TO THE DEFENDANT, HOWEVER HE REFUSED TO COMPLY AND DISOBEYED COMMANDS. THE DEFENDANT WAS ALSO VERBALLY NON COMPLIANT AND CONTINUED TO QUESTION THE COMMANDS THAT WERE GIVEN TO HIM. WHEN THE DEFENDANT WAS FINALLY LAYING DOWN FACE DOWN, OFFICERS MOVED UP AND ATTEMPTED TO REMOVE THE GUN FROM HIS FRONT RIGHT POCKET AT WHICH TIME THE DEFENDANT TRIED TO PUSH UP FORCEFULLY AND RESISTED ARREST. AFTER A BRIEF STRUGGLE, THE DEFENDANT WAS PLACED UNDER ARREST AND IN HANDCUFFS.

AFTER THE DEFENDANT WAS IN CUSTODY, A ONE ON ONE IDENTIFICATION WAS CONDUCTED IN WHICH THE VICTIM POSITIVELY IDENTIFIED THE DEFENDANT AS THE PERSON LEAVING THE TRUCK THAT CAUSED THE ACCIDENT.

***WHILE THE DEFENDANT WAS IN CUSTODY, HE STATED THAT IT WAS SOMEONE ELSE MATCHING HIS DESCRIPTION, THAT WAS WALKING BEHIND HIM, THAT WAS THE ONE LEAVING THE ACCIDENT. THE DEFENDANT WAS SUBSEQUENTLY BOOKED***.

(emphasis added).

89.     At the time the Phoenix Defendants were submitting charges they admit that Lageman told them it was a case of mistaken identity – yet they did nothing about it.

90.     Lageman has suffered injuries to his person and his well-being because of the Phoenix Defendants' actions.

91.     He chipped his teeth. His mental health has suffered gravely. He tried committing suicide as a result of the trauma from this incident. He has lost jobs because of this. He is diagnosed with PTSD and has voluntarily admitted himself to a psych unit after calling the suicide helpline and being told they were sending police to check on him.

12

92.    Lageman continues to suffer from his injuries whether physical, mental, or emotional and will suffer them for the rest of his life.

## COUNT I

## EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

(*Phoenix Defendants*)

93.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

94.    42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from the use of excessive force by law enforcement officers. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Stephan Shere's rights to freedom from unreasonable seizures.

95.    The Phoenix Defendants acted willfully, knowingly, and with specific intent to deprive Lageman of his rights under the Fourth Amendment of the United States Constitution, including his right to be secure in his person and free from the use of unreasonable force and seizure.

96.    The Phoenix Defendants acted unreasonably by using unnecessary deadly forced as described herein.

97.    Lageman was not resisting arrest.

98.    Lageman showed the Phoenix Defendants his weapon and held his hands away from it.

99.    Despite the clear evidence that Lageman was non-threatening, not resisting arrest, and was trying to be helpful, Defendants attacked Lageman causing serious injuries.

100.    Other officers, failed to intercede or intervene to prevent their fellow officers from using unwarranted, reckless force with wanton disregard to the preservation of life.

101.    Lageman's injuries were the direct result of the Phoenix Defendants' actions

13

and inactions.

102.    Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Lageman and a high probability that substantial harm would result.

103.    In causing the painful, barbaric injuries to Stephan, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

## COUNT II

## EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – *Monell* - POLICY

*(City; Sullivan)*

104.    Plaintiff incorporates by reference all previous allegations as fully set forth herein.

105.    As previously explained, U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

106.    Defendant City and Defendant Sullivan's acts or failure to act deprived Lageman of his constitutional rights.

107.    The City has for years established and implemented policies and procedures that created a pattern and practice in the Phoenix Police Department that consistently acts with wanton disregard for the rights of individuals and the sanctity of human life.

108.    Despite the Phoenix Police Department's and the City's ministrations, de-escalation techniques are upon information and belief rarely used and the wrongful use of excessive force has become the norm.

109.    The City and Sullivan provide little transparency to the investigation and discipline – if any – of its officers and agents.

110.    The City and Sullivan release edited or redacted versions of evidence which limit or hide information that should be released.

111.    The policies and procedures in place have failed and established a police

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

14

force that has consistently acted with blatant disregard to Lageman's constitutional rights and extreme indifference to the value of his life.

112.    The Phoenix Police Department has consistently failed to adequately discipline their officers who engage in unlawful conduct, ultimately creating a culture in which use of excessive force and unreasonable use of deadly force is commonplace.

113.    Therefore, the policies adopted by Defendant City and Defendant Sullivan, lead their officers to deliberately injure Lageman.

### COUNT III

### EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – *Monell* – CUSTOM AND PRACTICE

*(City; Sullivan)*

114.    Plaintiff incorporates by reference all previous allegations as fully set forth herein.

115.    As previously explained, U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

116.    Defendant City and Defendant Sullivan's acts or failure to act deprived Stephan of his constitutional rights.

117.    As described herein, the City and the Phoenix Police Department through Defendant Sullivan and his predecessors has for years created a legacy of using excessive and unlawful force against the citizens of Phoenix, Arizona.

118.    The City, the Phoenix Police Department, and Defendant Sullivan as well as his predecessors has for years acted pursuant to their customs and practices in the use of excessive force, which is an expressly adopted official policy or custom within the Phoenix Police Department.

119.    Operation Orders advise officers on the use of de-escalation techniques in situations where objectively no lethal force is warranted.

120.    The City and Sullivan were aware of the Phoenix Police Department's history of Chiefs claiming that new de-escalation policies or use of force policies had been established.

15

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

121. The statistics show otherwise.

122. Instead, the customs and practices of the City, the Phoenix Police Department, and Sullivan show that the de-escalation and use of non-lethal force is not enforced through written policy but established and ratified by custom and practice.

123. Despite the Phoenix Police Department's and the City's ministrations, de-escalation techniques are upon information and belief rarely used and the wrongful use of excessive force has become the norm.

124. The policies and procedures in place have failed and established a police force that has consistently acted with blatant disregard to Lageman's constitutional rights and extreme indifference to the value of his life.

125. It is unquestionable that there is a systemic failure by the City, the Phoenix Police Department, and Sullivan that have allowed, supported, and established the commonplace use of excessive force violative of the rights of the citizens of Phoenix, Arizona.

126. Therefore, the established customs and practices led directly to the injuries sustained by Lageman.

127. The City and Sullivan are liable for Lageman's injuries due to its established customs, patterns, and practices.

**COUNT IV**

**DUTY AND FAILURE TO INTERVENE**

*(Phoenix Defendants)*

128. Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

129. "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham*, 229 F.3d at 1289 (quotations omitted) (quoting *United States v. Koon*, 34 F.3d 1416, 1447, n.25 (9th Cir. 1994)). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.* (citation omitted).

130. Law enforcement officers who have a realistic opportunity to prevent a

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

fellow officer from violating a citizen's Constitutional rights have a duty to intervene to protect the victim from the unconstitutional retaliation, use of force or violation of due process of law.

131. As set forth herein, at no time did any of the Phoenix Defendants make any affirmative step to intervene to protect Plaintiffs' Constitutional rights.

132. The acts and/or omissions of Phoenix Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs. Plaintiffs, therefore, prays for an award of punitive and exemplary damages against these individual defendants in an amount to be determined according to proof.

133. Plaintiff suffered damages as a direct and proximate result of the illegal acts of the Phoenix Defendants.

## COUNT V
## NEGLIGENCE AND GROSS NEGLIGENCE
### *(All Defendants)*

134. Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

135. The basic elements of actionable negligence are a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach. *Ballesteros v. State*, 161 Ariz. 625, 627, 780 P.2d 458, 460 (App. 1989).

136. "A duty is a matter of 'the relation between individuals which imposes upon one a legal obligation for the benefit of another.'" *Id.* (internal citations omitted). A duty is breached when the defendant fails to conform to the standard of care reasonable under the circumstances. *Ballesteros*, 161 Ariz. at 627.

137. At all relevant times, each and every Defendant had a duty to exercise ordinary care for the safety of Plaintiff.

138. This includes taking certain actions and refraining from other actions such that the safety from harm to Plaintiff was preserved.

139. Defendants breached that duty systematically and repeatedly, including their

acts and omissions set forth above, resulting in the injuries to Plaintiff.

140. Defendant City of Phoenix is vicariously liable under *respondeat superior* for the actions of any employee, agent, or servant of the City of Phoenix, including that of the other named Defendants in this case.

141. The Phoenix Defendants, while acting as agents and employees for the Phoenix Police Department, owed a duty to Stephan to perform their responsibilities as officers of the law without the use of excessive force.

142. The Phoenix Defendants, while acting as agents and employees for Phoenix Police Department, owed a duty to Plaintiff to act objectively reasonably under the circumstances.

143. The Phoenix Defendants' use of excessive force upon Plaintiff constitutes recklessness and/or negligence for which the Defendants are individually liable.

144. The Phoenix Defendants' conduct, in using excessive force, constitutes negligence and gross negligence for which the Phoenix Defendants are individually liable.

145. In taking the actions as described above, the Phoenix Defendants breached their duty to refrain from such unreasonable and indifferent conduct.

146. As a direct and proximate result of Defendants' breach, Plaintiff sustained severe and permanent injuries, suffered extreme pain and suffering, continues to suffer from severe PTSD, and has extreme difficulty in maintaining or creating meaningful relationships.

147. Defendants' acts and omissions set forth above, also demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Plaintiff and a high probability that substantial harm would result.

## COUNT VI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Phoenix Defendants, City [vicarious liability])*

148. Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

18

149.    To sue for intentional infliction of emotional distress, a claimant must show: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended or recklessly disregarded the certainty that the claimant would suffer emotional distress; and (3) the claimant suffered emotional distress. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 553, 905 P.2d 559, 562 (Ct. App. 1995).

150.    The Defendants engaged in extreme and outrageous conduct in attacking Plaintiff.

151.    All the Phoenix Defendants had a duty to intervene.

152.    Through their conduct, the Defendants either intended or completely disregarded Plaintiff's dignity and constitutional rights and knew their conduct would lead Stephan to suffer emotional distress.

153.    Thus, the Defendants are liable for intentional infliction of emotional distress.

**<u>COUNT VII</u>**

**<u>BATTERY</u>**

*(Phoenix Defendants)*

154.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

155.    The Phoenix Defendants intentionally beat Plaintiff causing harmful or offensive contact with Plaintiff.

156.    As a direct and proximate result of the Phoenix Defendants' harmful or offensive contact, Plaintiff suffered severe injuries.

157.    These Defendants' acts constitute a battery upon Plaintiff in the above-described bodily contact was intentional, unauthorized, or grossly offensive in nature.

158.    The acts and omissions of these Defendants were intentional, negligent, reckless, and unwarranted, and without any just cause or provocation.

159.    As a direct and proximate result of these Defendants' conduct, Plaintiff was deprived of his liberty, and was ultimately severely injured. The conduct described herein was undertaken by the Phoenix Defendants within the scope of their employment and under

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

19

color of law such that their employer, Phoenix Police Department – and the City of Phoenix – are vicariously liable for their actions.

## COUNT IX

## NEGLIGENT HIRING, SUPERVISION, RETENTION, AND/OR TRAINING

*(Phoenix Defendants, Sullivan, City [Monell liability])*

160.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

161.    Under Arizona law, an employer may be held directly liable for negligent hiring, retaining and supervision of their employees if: i) The employer knew or should have known the risk of hiring, supervising, and training a particular employee and, ii) The employer's negligence proximately caused the plaintiff's injury.

162.    Upon information and belief, the Phoenix Police Department through the City is ranked as the top policing agency in the nation for use of deadly and excessive force by officers.

163.    The United States Department of Justice (USDOJ) is investigating the Phoenix Police Department for systemic violations through their failure to properly train, investigate, or discipline officers.

164.    The City through the Phoenix Police Department was negligent in their hiring, supervision, retention, and/or training of the Defendants.

165.    Defendant City and Defendant Sullivan have a duty to adequately train their police officers to protect members of the public.

166.    The Phoenix Defendants and Defendant Sullivan were acting under the color of state law.

167.    The Operation Orders of the Phoenix Police Department were not adequate to handle the usual and recurring situations that Phoenix Police officers face.

168.     As a result of the USDOJ investigation, the Phoenix Police Department received suggestions to increase the usage of de-escalation techniques and decrease the employment of unwarranted excessive force.

169.    Defendant City and Defendant Sullivan, undeniably failed to employ these

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

suggestions from the USDOJ and maintains inadequate training.

170.    The acts, omissions, and conduct of the Defendants as described herein were the direct and proximate cause of the injuries of Plaintiff and violated Plaintiff's constitutional, statutory and common law rights as guaranteed by the law and Constitution of the State of Arizona.

## JURY TRIAL DEMAND

171.    Plaintiff hereby demands a jury trial in this matter as to all claims and against all Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against the Defendants and in favor of the Plaintiff, as follows:

a)    For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b)    For all other non-pecuniary damages as to be proven at trial;

c)    For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

d)    For pre-and post judgment interest to the extent provided by law;

e)    For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f)    For such other relief as this Court may deem proper.

///

///

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

21

**RESPECTFULLY SUBMITTED** this 3rd day of February 2026.


**MILLS + WOODS LAW, PLLC**


By_____/s/ Sean A. Woods_____
**MILLS + WOODS LAW, PLLC**
Sean A. Woods
Robert T. Mills
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiff*


**ORIGINAL** filed this 3rd day of February 2026
via AZTurboCourt with the Clerk of the
Maricopa County Superior Court


_____/s/ Ben Dangerfield_____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

22

Clerk of the Superior Court
*** Electronically Filed ***
A. Nasui, Deputy
2/3/2026 5:44:45 PM
Filing ID 21407234

Person/Attorney Filing: Sean A. Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[ □ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Little Joe Lageman<br>Plaintiff(s),<br>v.<br>City of Phoenix, et al.<br>Defendant(s). | Case No. **CV2026-004816**<br><br>**CERTIFICATE OF<br>COMPULSORY ARBITRATION** |

I certify that I am aware of the dollar limits and any other limitations set forth by the Local Rules of Practice for the Maricopa County Superior Court, and I further certify that this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this February 03, 2026

By: Sean A. Woods /s/
Plaintiff/Attorney for Plaintiff

Person Filing: Sean A. Woods
Address (if not protected): 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Telephone: (480)999-4556
Email Address: swoods@millsandwoods.com
Representing [ ☐ ] Self or [☒ ] Attorney for:
Lawyer's Bar Number: 028930, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
A. Nasui, Deputy
2/3/2026 5:44:45 PM
Filing ID 21407236

## SUPERIOR COURT OF ARIZONA
### IN MARICOPA COUNTY

Case Number: **CV2026-004816**

Little Joe Lageman
Name of Plaintiff

**SUMMONS**

AND

City of Phoenix, et al.
Name of Defendant

| **WARNING**: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help. |
| --- |

**FROM THE STATE OF ARIZONA TO:** Michael Sullivan

Name of Defendant

1.    **A lawsuit has been filed against you.** A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.    If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the document in this case.

*AZturboCourt.gov Form Set #12690951*

3.  If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5.  Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6.  Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *February 03, 2026*

*JOSEPH W. MALKA*
Clerk of Superior Court

By: *A. NASUI*
Deputy Clerk



If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

*AZturboCourt.gov Form Set #12690951*

Person Filing: Sean A. Woods
Address (if not protected): 5055 N. 12th St. Suite 101
City, State, Zip Code:  Phoenix, AZ 85014
Telephone: (480)999-4556
Email Address: swoods@millsandwoods.com
Representing [□ ] Self or [☒ ] Attorney for:
Lawyer's Bar Number: 028930, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
A. Nasui, Deputy
2/3/2026 5:44:45 PM
Filing ID 21407237

## SUPERIOR COURT OF ARIZONA
### IN MARICOPA COUNTY

Case Number: **CV2026-004816**

Little Joe Lageman
Name of Plaintiff

**SUMMONS**

AND

City of Phoenix, et al.
Name of Defendant

| **WARNING**:  This is an official document from the court that affects your rights.  Read this carefully. If you do not understand it, contact a lawyer for help. |
|---|

**FROM THE STATE OF ARIZONA TO:** Adrian Nicolas Ortiz Samaniego

Name of Defendant

1.      **A lawsuit has been filed against you.**  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.      If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note:  If you do not file electronically you will not have electronic access to the document in this case.

AZturboCourt.gov Form Set #12690951

3. If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4. You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5. Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6. Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *February 03, 2026*

*JOSEPH W. MALKA*
Clerk of Superior Court

By: *A. NASUI*
Deputy Clerk



If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Person Filing: Sean A. Woods
Address (if not protected): 5055 N. 12th St. Suite 101
City, State, Zip Code:  Phoenix, AZ 85014
Telephone: (480)999-4556
Email Address: swoods@millsandwoods.com
Representing [ ☐ ] Self or [ ☒ ] Attorney for:
Lawyer's Bar Number: 028930, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
A. Nasui, Deputy
2/3/2026 5:44:45 PM
Filing ID 21407238

# SUPERIOR COURT OF ARIZONA
## IN MARICOPA COUNTY

Case Number: **CV2026-004816**

Little Joe Lageman
_____
Name of Plaintiff

**SUMMONS**

AND

City of Phoenix, et al.
_____
Name of Defendant

| |
|---|
| **WARNING**:  This is an official document from the court that affects your rights.  Read this carefully.  If you do not understand it, contact a lawyer for help. |

**FROM THE STATE OF ARIZONA TO:** Jane Doe Samaniego
_____
Name of Defendant

1. **A lawsuit has been filed against you.**  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2. If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note:  If you do not file electronically you will not have electronic access to the document in this case.

AZturboCourt.gov Form Set #12690951

3.  If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5.  Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6.  Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *February 03, 2026*

*JOSEPH W. MALKA*
Clerk of Superior Court

By: *A. NASUI*
Deputy Clerk



If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

*AZturboCourt.gov Form Set #12690951*

Person Filing: Sean A. Woods
Address (if not protected): 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Telephone: (480)999-4556
Email Address: swoods@millsandwoods.com
Representing [ □ ] Self or [ ☒ ] Attorney for:
Lawyer's Bar Number: 028930, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
A. Nasui, Deputy
2/3/2026 5:44:45 PM
Filing ID 21407239

# SUPERIOR COURT OF ARIZONA
## IN MARICOPA COUNTY

Case Number: **CV2026-004816**

Little Joe Lageman
_____
Name of Plaintiff

**SUMMONS**

AND

City of Phoenix, et al.
_____
Name of Defendant

---

**WARNING**:  This is an official document from the court that affects your rights.  Read this carefully.  If you do not understand it, contact a lawyer for help.

---

**FROM THE STATE OF ARIZONA TO:** Diego Santana
_____
Name of Defendant

1.  **A lawsuit has been filed against you.**  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.  If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note:  If you do not file electronically you will not have electronic access to the document in this case.

*AZturboCourt.gov Form Set #12690951*

3.     If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.     You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5.     Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6.     Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *February 03, 2026*

*JOSEPH W. MALKA*
Clerk of Superior Court

By: *A. NASUI*
Deputy Clerk



If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Person Filing: Sean A. Woods
Address (if not protected): 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Telephone: (480)999-4556
Email Address: swoods@millsandwoods.com
Representing [□ ] Self or [☒ ] Attorney for:
Lawyer's Bar Number: 028930, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
A. Nasui, Deputy
2/3/2026 5:44:45 PM
Filing ID 21407240

## SUPERIOR COURT OF ARIZONA
### IN MARICOPA COUNTY

Case Number: **CV2026-004816**

Little Joe Lageman
Name of Plaintiff

**SUMMONS**

AND

City of Phoenix, et al.
Name of Defendant

---

**WARNING**: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help.

---

**FROM THE STATE OF ARIZONA TO:** Jane Doe Santana
Name of Defendant

1. **A lawsuit has been filed against you.** A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2. If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the document in this case.

AZturboCourt.gov Form Set #12690951

3.      If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.      You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5.      Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6.      Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *February 03, 2026*

*JOSEPH W. MALKA*
Clerk of Superior Court

By: *A. NASUI*
Deputy Clerk



If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Person Filing: Sean A. Woods
Address (if not protected): 5055 N. 12th St. Suite 101
City, State, Zip Code:  Phoenix, AZ 85014
Telephone: (480)999-4556
Email Address: swoods@millsandwoods.com
Representing [□  ] Self or [☒  ] Attorney for:
Lawyer's Bar Number: 028930, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
A. Nasui, Deputy
2/3/2026 5:44:45 PM
Filing ID 21407241

## SUPERIOR COURT OF ARIZONA
## IN MARICOPA COUNTY

Case Number: **CV2026-004816**

Little Joe Lageman

Name of Plaintiff

**SUMMONS**

AND

City of Phoenix, et al.

Name of Defendant

| |
|---|
| **WARNING**:  This is an official document from the court that affects your rights.  Read this carefully.  If you do not understand it, contact a lawyer for help. |

**FROM THE STATE OF ARIZONA TO:** Officer Rodriguez #10345

Name of Defendant

1.    **A lawsuit has been filed against you.**  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.    If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note:  If you do not file electronically you will not have electronic access to the document in this case.

AZturboCourt.gov Form Set #12690951

3.    If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.    You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5.    Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6.    Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *February 03, 2026*

*JOSEPH W. MALKA*
Clerk of Superior Court

By: *A. NASUI*
Deputy Clerk



If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

*AZturboCourt.gov Form Set #12690951*

Person Filing: Sean A. Woods
Address (if not protected): 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Telephone: (480)999-4556
Email Address: swoods@millsandwoods.com
Representing [□ ] Self or [☒ ] Attorney for:
Lawyer's Bar Number: 028930, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
A. Nasui, Deputy
2/3/2026 5:44:45 PM
Filing ID 21407242

## SUPERIOR COURT OF ARIZONA
## IN MARICOPA COUNTY

Case Number: **CV2026-004816**

Little Joe Lageman
Name of Plaintiff

**SUMMONS**

AND

City of Phoenix, et al.
Name of Defendant

| **WARNING**: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help. |
| --- |

**FROM THE STATE OF ARIZONA TO:** Jane Doe Rodriguez
Name of Defendant

1.    **A lawsuit has been filed against you.** A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.    If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the document in this case.

AZturboCourt.gov Form Set #12690951

3.      If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.      You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5.      Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6.      Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *February 03, 2026*

*JOSEPH W. MALKA*
Clerk of Superior Court

By: *A. NASUI*
Deputy Clerk



If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Person Filing: Sean A. Woods
Address (if not protected): 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Telephone: (480)999-4556
Email Address: swoods@millsandwoods.com
Representing [□ ] Self or [☒ ] Attorney for:
Lawyer's Bar Number: 028930, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
A. Nasui, Deputy
2/3/2026 5:44:45 PM
Filing ID 21407235

## SUPERIOR COURT OF ARIZONA
### IN MARICOPA COUNTY

Case Number: **CV2026-004816**

Little Joe Lageman
Name of Plaintiff

**SUMMONS**

AND

City of Phoenix, et al.
Name of Defendant

| **WARNING**: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help. |
| --- |

**FROM THE STATE OF ARIZONA TO:** City of Phoenix
Name of Defendant

1. **A lawsuit has been filed against you.** A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2. If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the document in this case.

*AZturboCourt.gov Form Set #126090951*

Arizona Supreme Court
Summons

Page 1 of 2

EFCV11f-042523

3.  If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5.  Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6.  Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *February 03, 2026*

*JOSEPH W. MALKA*
Clerk of Superior Court

By: *A. NASUI*
Deputy Clerk



If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #12690951

Clerk of the Superior Court
*** Electronically Filed ***
K. Scott, Deputy
3/5/2026 1:53:57 PM
Filing ID 21598605

Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.5169
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

### IN THE MARICOPA COUNTY SUPERIOR COURT

| | |
|---|---|
| Little Joe Lageman, an individual,<br><br>                              Plaintiff,<br><br>         vs.<br><br>CITY OF PHOENIX, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; ADRIAN NICOLAS ORTIZ SAMANIEGO and JANE DOE SAMANIEGO, a married couple; DIEGO SANTANA and JANE DOE SANTANA, a married couple; OFFICER RODRIGUEZ # 10345 and JANE DOE RODRIGUEZ, a married couple; and, JOHN AND JANE DOES I-X,<br><br>                              Defendants | Case No.: CV2026-004816<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiff, by and through his attorneys, Mills + Woods Law, PLLC, for his Complaint against the CITY OF PHOENIX, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; Adrian Nicolas Ortiz Samaniego ("Samaniego") and Jane Doe Samaniego; Diego Santana ("Santana") and Jane Doe Santana; Officer Rodriguez Badge # 10345 ("Rodriguez") and Jane Doe Rodriguez (collectively "Defendants"), hereby alleges as follows:

### JURISDICTION AND VENUE

1.    Pursuant to 42 U.S.C. §1983 *et seq.*, Plaintiff brings this action for violations of the United States Constitution, including without limitation the Eighth and Fourteenth

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Amendments and Arizona common and statutory laws.

2.      The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3.      To the extent applicable, and without conceding that said statute applies, Plaintiff has served their Notice of Claim upon Defendants in compliance with A.R.S. §12-821.01, *et seq.* More than sixty (60) days have expired since Plaintiffs served their Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

4.      Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this Complaint because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Maricopa County, Arizona.

5.      Venue is proper in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## **PARTIES**

6.      At all relevant times in this Complaint, Plaintiff Little Joe Lageman ("Plaintiff" or "Little Joe" or "Lageman") was an individual residing in Maricopa County, Arizona.

7.      Defendant CITY OF PHOENIX is a governmental entity that acts by and through its officials, employees, and agents, including without limitation the Phoenix Police Department, and each of the other Defendants in this action.

8.      Defendant MICHAEL SULLIVAN is the Chief of the Phoenix Police Department and is sued in his official and individual capacity. He is tasked with oversight of the Phoenix Police Department and is responsible for all policies and procedures promulgated by the Phoenix Police Department. He is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

9.      Defendant Adrian Nicolas Ortiz Samaniego is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

2

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

10. Defendant Diego Santana is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

11. Defendant Officer Rodriguez Badge # 10345 is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

12. The Samaniego, Santana, and Rodriguez Defendants are collectively referred to as the Phoenix Defendants.

13. The City of Phoenix is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Phoenix Police Department (the "City") and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, Defendants were acting within the course and scope of their employment or contract with Phoenix - or entities privately contracted with Phoenix.

14. For purposes of Plaintiffs' claims arising under Federal law, including without limitation the United States Constitution and 42 U.S.C. §1983 *et seq*., and as may be relevant to Plaintiff's state law claims, at all relevant times described herein, Defendants were acting under color of state law.

15. Defendants JANE DOE SAMANIEGO; JANE DOE SANTANA; and JANE DOE RODRIGUEZ are included as Defendants because the Phoenix Defendants were acting for the benefit of their respective marital communities, if any, and therefore the respective marital communities, if any, are liable for their actions as set forth herein.

16. Each of the Defendants failed to do what is minimally required of them by the United States Constitution, and the laws of the State of Arizona, relative to the care, custody and control of Little Joe Lageman.

17. By failing in these obligations, Defendants were deliberately indifferent to Lageman's rights guaranteed him by the United States Constitution and the State of Arizona.

18.    As a result of Defendants' deliberate indifference and as a result of intentional acts and omissions to act that fell below the proscribed standard of care – through failures to properly supervise; properly carry out their job duties; and to properly administer medical attention – Lageman suffered immense pain and suffering and injuries to his person.

## BACKGROUND

19.    On June 13, 2024 – less than three (3) months following the injuries sustained by Lageman, The USDOJ Civil Rights Division issued a 126-page report titled "Investigation of the City of Phoenix and the Phoenix Police Department" (the "Report").[1]

20.    The Report's Executive Summary states:

On August 5, 2021, the Department of Justice opened a pattern or practice investigation of the Phoenix Police Department (PhxPD) and the City of Phoenix ("the City" or "Phoenix"). Our investigation revealed systemic problems within PhxPD that deprive people of their rights under the Constitution and federal law. ***We found pervasive failings in PhxPD's policies, training, supervision, and accountability systems that have disguised and perpetuated these violations for years.***
(emphasis added)

21.    On the USDOJ website and in the Report, it is explicitly stated that "the Department finds that: PhxPD uses excessive force, including unjustified deadly force and other types of force."[2]

22.    Chief Sullivan was appointed interim Chief in July 2022.

23.    According to the Report, Chief Sullivan has started implementing certain reforms, including updates to PhxPD's use-of-force policy and training. "I saw some uses of force that made me think that we need to do something different," he told Justice Department investigators.

24.    To determine the pattern and practice analysis, the Report cites to 34 U.S.C. § 12601; *see also* 42 U.S.C. § 12101 et seq. A pattern or practice exists where violations

---

[1] Retrieved October 4, 2024 from https://www.justice.gov/crt/media/1355866/dl?inline

[2] Retrieved October 4, 2024 from https://www.justice.gov/opa/pr/justice-department-finds-civil-rights-violations-phoenix-police-department-and-city-phoenix

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

4

are repeated rather than isolated. *Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 336 n.16 (1977). A pattern or practice does not require the existence of an official policy or custom. *United States v. Colorado City*, 935 F.3d 804, 810 (9th Cir. 2019).

25.     The report also found that Phoenix Police's training and weak oversight contribute to the pattern of excessive force, specifically finding that "PhxPD training has mischaracterized the law and encouraged immediate and indiscriminate force, which predictably results in excessive force. Many of the problematic practices we saw originated with PhxPD training. Despite systems for oversight and review, PhxPD's chain of command approved nearly all use-of-force incidents, including those described above." *Id.* at 35.

26.     The report found that:

PhxPD also has trained officers to use serious force to respond to hypothetical, not actual, danger. For example, in a training for all supervisors at a station, PhxPD showed a video of an incident in which an officer shot a man carrying a knife with a 40mm round. Although the man was on a deserted street in downtown Phoenix at 2:45 a.m., trainers said the force was reasonable because there "was an element of jeopardy." The jail was across the street and people "could be" released at any time. Trainers have also taught officers to fire Tasers and 40mm projectiles against a person in a behavioral health crisis if the person does not comply with commands, whether or not the person presents a threat. The mindset that a theoretically possible future threat, however unlikely, justifies immediate force violates the Fourth Amendment.

*Id.*

27.     The USDOJ report continues:

Phoenix has trained its officers that all force—even deadly force—is de-escalation. This attitude runs contrary to the basic principles of de-escalation, which offers strategies, such as time, distance, cover, and verbal persuasion, to help a person voluntarily comply with officers without the need to use force or to lessen the force needed. 34 PhxPD officers have been trained to "use escalation to de-escalate the situation" as quickly as possible. One trainer suggested immediate force stops a situation "before you really have to hurt someone," and explained that "de-escalation, like talking nice, will get someone killed." In practice, this translates to quickly using unreasonable force, often without considering whether any force is necessary at all.

Indeed, in some trainings we observed, trainers encouraged officers to use

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

force without warning or just seconds after arriving at a scene, regardless of whether the person presented an apparent risk to officers or others.

*Id.* at 36.

28.     The USDOJ report details more training that is unconstitutional:

Similarly, PhxPD has taught officers that it is appropriate to fire projectiles at people who are not following commands but pose no threat. Indeed, 40mm operators have been trained they can fire when faced with "passive resistance," such as when a person is defiant in response to commands, but not aggressive. For example, in a role-playing training we observed, officers stopped a driver on suspicion of assault. The actor got out of his car with his hands up but did not follow the trainee's directions and was moving around and yelling. Eventually, the trainee shot the actor with a 40mm round. During the debrief, instructors told the trainee that he should have taken more decisive action and fired the moment the actor did not comply with a command.

*Id.* at 37.

29.     The Report found that there are several patterns that Phoenix Police use that violate constitutional rights:

PhxPD uses unconstitutional deadly force. We identified several patterns:

•       First, officers violate the Constitution when they fire their weapons at people who present no immediate threat of harm, and they continue to shoot at people after they are no longer a threat.

•       Second, officers shoot when their own actions have created or greatly magnified the risk they face. We identified unconstitutional shootings that likely could have been avoided absent officers' reckless tactics.

•       Third, officers unreasonably delay rendering aid to people they have shot, and at times use significant, unreasonable force against people who are already incapacitated, sometimes even unconscious, as the result of police gunfire.

*Id.* at 14.

30.     The Report further found that "[f]or big city police departments, PhxPD has one of the highest rates of fatal shootings in the country per year. PhxPD typically reports more than 20 police shootings each year and sometimes significantly exceeds that number."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

6

*Id.* at 15.

31.    The Report, under a heading entitled "PhxPD Officers Fire Their Guns at People Who Present No Immediate Threat" found that:

> <u>PhxPD officers fail to properly assess whether to shoot once they see a person holding a weapon, even when the person presents no immediate threat.</u>

* * *

> At times, officers continue to shoot after any threat has ended. Under the Fourth Amendment, justification for deadly force, or any force, may end after the first gunshot. "[T]erminating a threat doesn't necessarily mean terminating the suspect. If the suspect is on the ground and appears wounded, he may no longer pose a threat; a reasonable officer would reassess the situation rather than continue shooting" *Zion v. Cty. of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017).

*Id.* at 16 (emphasis added).

32.    The Phoenix Police Department and the City authorized customs, policies, patterns, and practices that are unconstitutional.

33.    These customs, policies, patterns, and practices were utilized in the Phoenix Defendants' response to Lageman.

34.    The three patterns the USDOJ found above are exactly the patterns that were used against Lageman.

35.    For example, Lageman presented no immediate threat of harm, but the Phoenix Defendants utilized force as their first resort/response.

36.    The Phoenix Defendants recklessly approached the scene – they ignored Lageman's responses.

37.    They yelled multiple conflicting commands to Lageman causing him confusion as to where to put his hands or how to position his body.

38.    Each of those practices fell exactly in line with the patterns of unconstitutional behavior that the USDOJ found.

## FACTUAL ALLEGATIONS

39.    On March 29, 2024, Lageman was walking from his mother-in-law's house

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

7

to his church to speak with his grandmother.

40. He was less than one minute away from the church. Out of nowhere, a police vehicle driven aggressively by an amped-up Officer Santana pulled up and stopped while Officer Santana jumped out of the driver's seat.

41. Two minutes earlier, Santana had arrived at a hit and run scene. A suspect was described by the complainant as a Hispanic male with black hair 5' 8" 160 pounds wearing a black shirt.

42. He radioed over dispatch that he didn't have the male out in this area.

43. They knew the vehicle. They had all the information about the owner of the vehicle and where the vehicle was registered.

44. Instead of pulling that information – which would have given them the information for the person who actually committed the hit and run – Santana decided to throw caution to the wind.

45. Lageman was 6'0" 140 pounds at the time. He is Hispanic. He was wearing a black hoodie.

46. Santana asked the victim for a description of the suspect.

47. The victim clearly said the suspect was wearing a white shirt.

48. On video, Santana then tells himself that the suspect was wearing a black shirt.

49. Lageman was wearing a dark blue shirt with a dark hoodie.

50. Santana raced away and saw a person to the left of his vehicle and had a short conversation with him. He then raced away again.

51. This time, seeing Lageman, he was ready to attack. After Santana jumped out of his driver seat, he only asked one question: "where are you coming from?"

52. Lageman told him he was "walking, bro".

53. Santana approached Lageman and said we are looking for someone that is walking in this area.

54. Lageman repeated that he was "walking bro" but beginning to fear for his life, he put his hands in the air.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

8

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

55. Lageman immediately told Santana that he had a gun on him and showed Santana with a nod – while keeping his hands in the air – that it was in his right pant pocket.

56. Santana then asked Lageman to put his hands on his head.

57. Then he told Lageman to face away from him.

58. Lageman asked why he had to face away from him.

59. Santana then instructed him to put his hands on his head.

60. Santana then drew his firearm and pointed it at Lageman.

61. Lageman told him he wasn't doing anything. Lageman again told Santana that his hands were up and that his gun was right there in his pocket – visible to Santana.

62. Notably, Santana did not tell Lageman he was under arrest, nor did he ask Lageman for any identification.

63. Santana then began giving conflicting directives to Lageman to either put his hands up or on his head.

64. Lageman was clearly scared and confused by the changing orders.

65. Officer Santana was clearly pumped full of adrenaline, tripping over his words – at one point even telling Lageman to put his gun on his head.

66. Lageman then put his hands on his head.

67. Then, Santana yelled at him to go on his knees.

68. Lageman showed him his hands were locked together on his head.

69. He then went on his knees and Santana said great that's all I wanted from you.

70. Then Santana immediately yelled for Lageman to get on his stomach.

71. Lageman asked how he can go on his stomach with his hands on his head.

72. Then Santana yelled for him to put his hands on the floor.

73. Lageman offered for another officer to come grab his gun.

74. Officers then suggested that they get the pepper ball launcher. Lageman was able to go on his stomach.

75. After having their handguns pointed at Lageman during this whole time, officers Santana, Rodriguez, and Samaniego then tackled Lageman, slammed his head into

the pavement, put their knees on his back, and pushed his face into the concrete, chipping his tooth.

76. Lageman did not resist, allowing himself to be handcuffed.

77. The video shows this.

78. The written reports say otherwise – they are rife with statements that Lageman was actively resisting arrest the entire time.

79. Lageman was put into the police vehicle with the officers on scene laughing at him and making pejorative comments about "having a smart one".

80. In Santana's report he wrote that before his encounter with Lageman while he was still at the accident scene that:

I PERCEIVED AN EERIE FEELING AND BASED ON THE INFORMATION AT THAT TIME, THAT THE COMPLAINANT'S VEHICLE WAS CRASHED INTO, THE SUSPECT HAD A GUN AND APPEARED INTOXICATED, AND IT WAS UNDETERMINED WHAT HIS MINDSET WAS. BASED ON THE TOTALITY OF THE CIRCUMSTANCE I FEARED FOR THE PUBLIC'S SAFETY AND SHIFTED MY PRIORITY OF SAFETY.

81. All of this happened because Santana based his investigation on an EERIE FEELING.

82. Lageman was charged with Leaving the scene of an accident-unattended vehicle, a class 1 misdemeanor, and with Resisting Arrest, a class 1 misdemeanor.

83. At no time in the Incident did Lageman resist arrest.

84. At no time in the Incident did Lageman threaten any officers.

85. It should not be surprising to find out that Lageman was not involved in any way in the hit and run accident that night.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

10

86.    On the left, a Mr. Kris Cardenas who is the son of the owner of the Black Silverado. On the right, Mr. Lageman:



87.    Furthermore, the owner of the Black Silverado had another son, a Mr. Robert Cardenas:



11

88.    Upon information and belief, both Kris and Robert Cardenas had access to the Black Silverado, and both drove the vehicle regularly.

89.    Upon information and belief, nobody – including the Phoenix Defendants, interviewed the actual owner of the Black Silverado on the day of the hit and run or at any point thereafter.

90.    After Lageman was taken into custody, the Phoenix Defendants took his keys.

91.    The Phoenix Defendants and other officers drove back to the location of the Black Silverado.

92.    They then tried to unlock the Black Silverado with Lageman's keys.

93.    Unsurprisingly, the keys did not work on the Black Silverado.

94.    Despite this, the Phoenix Defendants did not note this in their reports.

95.    Lageman told the officers, the deputies, the court, and the prosecutors over and over that he was not the person they were looking for.

96.    Despite this, Lageman spent: Five days in jail for crimes he did not commit and over one year fighting his charges – for crimes he did not commit.

97.    The Phoenix Defendants pressed forward, even knowing that Lageman was not the person they were looking for.

98.    They submitted charges, allowed them to move forward, only to ultimately lose when the prosecutor realized that everything Lageman had told them was true.

99.    Starting from the Incident through the dismissal, the Phoenix Defendants acted with malice, ignored Lageman's rights, violated his rights, and pushed a case against Lageman.

100.    Samaniego's Probable Cause Statement contains the following:

ON 3/29/3024 AT 1949 HOURS, OFFICERS RESPONDED TO EMERGENCY RADIO TRAFFIC REFERENCING A HIT AND RUN ACCIDENT THAT POSSIBLY INVOLVED A GUN. PRIOR TO POLICE ARRIVAL, THE VICTIM PROVIDED A DESCRIPTION OF THE SUBJECT LEAVING THE VEHICLE THAT CAUSED THE ACCIDENT AND STATED THAT HE SAW HIM REACH INTO THE VEHICLE AND POSSIBLY GRABBED A GUN.
OFFICERS SUBSEQUENTLY SPOTTED AN INDIVIDUAL, THE

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

DEFENDANT, SEVERAL HOUSES DOWN WALKING EASTBOUND ON SELLS DR THAT MATCHED THE DESCRIPTION THE VICTIM HAD PROVIDED.

OFFICERS SUBSEQUENTLY CONTACTED THE DEFENDANT AND ADVISED HIM TO STOP. OFFICERS NOTICED THAT THE DEFENDANT HAD A BLACK HANDGUN IN HIS RIGHT FRONT POCKET. OFFICERS GAVE SEVERAL COMMANDS TO THE DEFENDANT, HOWEVER HE REFUSED TO COMPLY AND DISOBEYED COMMANDS. THE DEFENDANT WAS ALSO VERBALLY NON COMPLIANT AND CONTINUED TO QUESTION THE COMMANDS THAT WERE GIVEN TO HIM. WHEN THE DEFENDANT WAS FINALLY LAYING DOWN FACE DOWN, OFFICERS MOVED UP AND ATTEMPTED TO REMOVE THE GUN FROM HIS FRONT RIGHT POCKET AT WHICH TIME THE DEFENDANT TRIED TO PUSH UP FORCEFULLY AND RESISTED ARREST. AFTER A BRIEF STRUGGLE, THE DEFENDANT WAS PLACED UNDER ARREST AND IN HANDCUFFS.

AFTER THE DEFENDANT WAS IN CUSTODY, A ONE ON ONE IDENTIFICATION WAS CONDUCTED IN WHICH THE VICTIM POSITIVELY IDENTIFIED THE DEFENDANT AS THE PERSON LEAVING THE TRUCK THAT CAUSED THE ACCIDENT. ***WHILE THE DEFENDANT WAS IN CUSTODY, HE STATED THAT IT WAS SOMEONE ELSE MATCHING HIS DESCRIPTION, THAT WAS WALKING BEHIND HIM, THAT WAS THE ONE LEAVING THE ACCIDENT. THE DEFENDANT WAS SUBSEQUENTLY BOOKED***.

(Emphasis added).

101. At the time the Phoenix Defendants were submitting charges they admit that Lageman told them it was a case of mistaken identity – yet they did nothing about it.

102. The Phoenix Defendants, upon information and belief, failed to properly investigate the claims even when faced with exculpatory evidence.

103. The Phoenix Defendants, upon information and belief, knew who the owner of the Black Silverado was and did not try to contact the owner.

104. The Phoenix Defendants created the scenario, pushed for charges on the scenario, knew the prosecution took up the charges, and allowed an innocent man to be charged for crimes he did not commit – while ignoring the facts that existed exonerating Lageman.

105. Lageman has suffered injuries to his person and his well-being because of

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

13

the Phoenix Defendants' actions.

106.    He chipped his teeth. His mental health has suffered gravely. He tried committing suicide as a result of the trauma from this incident. He has lost jobs because of this. He is diagnosed with PTSD and has voluntarily admitted himself to a psych unit after calling the suicide helpline and being told they were sending police to check on him.

107.    Lageman continues to suffer from his injuries whether physical, mental, or emotional and will suffer them for the rest of his life.

### COUNT I
### EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983
(*Phoenix Defendants*)

108.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

109.    42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from the use of excessive force by law enforcement officers. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Stephan Shere's rights to freedom from unreasonable seizures.

110.    The Phoenix Defendants acted willfully, knowingly, and with specific intent to deprive Lageman of his rights under the Fourth Amendment of the United States Constitution, including his right to be secure in his person and free from the use of unreasonable force and seizure.

111.    The Phoenix Defendants acted unreasonably by using unnecessary deadly forced as described herein.

112.    Lageman was not resisting arrest.

113.    Lageman showed the Phoenix Defendants his weapon and held his hands away from it.

114.    Despite the clear evidence that Lageman was non-threatening, not resisting

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

14

arrest, and was trying to be helpful, Defendants attacked Lageman causing serious injuries.

115.    Other officers, failed to intercede or intervene to prevent their fellow officers from using unwarranted, reckless force with wanton disregard to the preservation of life.

116.    Lageman's injuries were the direct result of the Phoenix Defendants' actions and inactions.

117.    Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Lageman and a high probability that substantial harm would result.

118.    In causing the painful, barbaric injuries to Stephan, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

### COUNT II
### EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – *Monell* - POLICY
*(City; Sullivan)*

119.    Plaintiff incorporates by reference all previous allegations as fully set forth herein.

120.    As previously explained, U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

121.    Defendant City and Defendant Sullivan's acts or failure to act deprived Lageman of his constitutional rights.

122.    The City has for years established and implemented policies and procedures that created a pattern and practice in the Phoenix Police Department that consistently acts with wanton disregard for the rights of individuals and the sanctity of human life.

123.    Despite the Phoenix Police Department's and the City's ministrations, de-escalation techniques are upon information and belief rarely used and the wrongful use of excessive force has become the norm.

124.    The City and Sullivan provide little transparency to the investigation and discipline – if any – of its officers and agents.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

15

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

125.    The City and Sullivan release edited or redacted versions of evidence which limit or hide information that should be released.

126.    The policies and procedures in place have failed and established a police force that has consistently acted with blatant disregard to Lageman's constitutional rights and extreme indifference to the value of his life.

127.    The Phoenix Police Department has consistently failed to adequately discipline their officers who engage in unlawful conduct, ultimately creating a culture in which use of excessive force and unreasonable use of deadly force is commonplace.

128.    Therefore, the policies adopted by Defendant City and Defendant Sullivan, lead their officers to deliberately injure Lageman.

## COUNT III
### EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – *Monell* – CUSTOM AND PRACTICE
*(City; Sullivan)*

129.    Plaintiff incorporates by reference all previous allegations as fully set forth herein.

130.    As previously explained, U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

131.    Defendant City and Defendant Sullivan's acts or failure to act deprived Stephan of his constitutional rights.

132.    As described herein, the City and the Phoenix Police Department through Defendant Sullivan and his predecessors has for years created a legacy of using excessive and unlawful force against the citizens of Phoenix, Arizona.

133.    The City, the Phoenix Police Department, and Defendant Sullivan as well as his predecessors has for years acted pursuant to their customs and practices in the use of excessive force, which is an expressly adopted official policy or custom within the Phoenix Police Department.

134.    Operation Orders advise officers on the use of de-escalation techniques in situations where objectively no lethal force is warranted.

135.    The City and Sullivan were aware of the Phoenix Police Department's

16

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

history of Chiefs claiming that new de-escalation policies or use of force policies had been established.

136. The statistics show otherwise.

137. Instead, the customs and practices of the City, the Phoenix Police Department, and Sullivan show that the de-escalation and use of non-lethal force is not enforced through written policy but established and ratified by custom and practice.

138. Despite the Phoenix Police Department's and the City's ministrations, de-escalation techniques are upon information and belief rarely used and the wrongful use of excessive force has become the norm.

139. The policies and procedures in place have failed and established a police force that has consistently acted with blatant disregard to Lageman's constitutional rights and extreme indifference to the value of his life.

140. It is unquestionable that there is a systemic failure by the City, the Phoenix Police Department, and Sullivan that have allowed, supported, and established the commonplace use of excessive force violative of the rights of the citizens of Phoenix, Arizona.

141. Therefore, the established customs and practices led directly to the injuries sustained by Lageman.

142. The City and Sullivan are liable for Lageman's injuries due to its established customs, patterns, and practices.

## COUNT IV
### MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983
*(Phoenix Defendants)*

143. Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

144. 42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The

17

Phoenix Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Lageman's rights to freedom from malicious prosecution.

145. The Phoenix Defendants acted willfully, knowingly, and with specific intent to deprive Lageman of his rights under the Fourth Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

146. The Phoenix Defendants acted unreasonably by failing to have PC to arrest and prosecute Lageman as discussed herein.

147. The Phoenix Defendants presented false information to the prosecutor's office for the purpose of convicting Lageman of crimes he did not commit.

148. The Phoenix Defendants acted with malice in instituting and continuing criminal proceedings against Lageman.

149. The criminal charges were brought in bad faith, and even when the Phoenix Defendants had knowledge of exculpatory evidence they pressed forward with prosecution.

150. Even knowing that Lageman was vehemently protesting and explaining to the Phoenix Defendants that they had the wrong person, the Phoenix Defendants did nothing to confirm that information.

151. Upon information and belief, they did not interview or investigate the actual owner of the vehicle.

152. The Phoenix Defendants knew that Lageman's keys did not operate the Black Silverado, but hid that from their police reports.

153. Upon information and belief, the Phoenix Defendants never investigated anyone other than Lageman despite having exculpatory and exonerating information and have still to date never performed any investigation into other suspects, nor have they ever interviewed the owner of the Black Silverado.

154. These intentional failures and concealments are evidence that the Phoenix Defendants were acting maliciously and in bad faith in continuing to prosecute Lageman.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

18

155.    Finally, the State dismissed all charges against Lageman on April 25, 2024.

156.    Lageman's arrest and prosecution was the direct result of the Phoenix Defendants' actions and inactions.

157.    Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Lageman's rights, and a high probability that substantial harm would result.

158.    In causing the utter devastation of Lageman's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages

## COUNT V
## DUTY AND FAILURE TO INTERVENE
*(Phoenix Defendants)*

159.    Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

160.    "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham*, 229 F.3d at 1289 (quotations omitted) (quoting *United States v. Koon*, 34 F.3d 1416, 1447, n.25 (9th Cir. 1994)). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.* (citation omitted).

161.    Law enforcement officers who have a realistic opportunity to prevent a fellow officer from violating a citizen's Constitutional rights have a duty to intervene to protect the victim from the unconstitutional retaliation, use of force or violation of due process of law.

162.    As set forth herein, at no time did any of the Phoenix Defendants make any affirmative step to intervene to protect Plaintiffs' Constitutional rights.

163.    The acts and/or omissions of Phoenix Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

19

rights of Plaintiffs. Plaintiffs, therefore, prays for an award of punitive and exemplary damages against these individual defendants in an amount to be determined according to proof.

164. Plaintiff suffered damages as a direct and proximate result of the illegal acts of the Phoenix Defendants.

**COUNT VI**
**NEGLIGENCE AND GROSS NEGLIGENCE**
*(All Defendants)*

165. Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

166. The basic elements of actionable negligence are a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach. *Ballesteros v. State*, 161 Ariz. 625, 627, 780 P.2d 458, 460 (App. 1989).

167. "A duty is a matter of 'the relation between individuals which imposes upon one a legal obligation for the benefit of another.'" *Id.* (internal citations omitted). A duty is breached when the defendant fails to conform to the standard of care reasonable under the circumstances. *Ballesteros*, 161 Ariz. at 627.

168. At all relevant times, each and every Defendant had a duty to exercise ordinary care for the safety of Plaintiff.

169. This includes taking certain actions and refraining from other actions such that the safety from harm to Plaintiff was preserved.

170. Defendants breached that duty systematically and repeatedly, including their acts and omissions set forth above, resulting in the injuries to Plaintiff.

171. Defendant City of Phoenix is vicariously liable under *respondeat superior* for the actions of any employee, agent, or servant of the City of Phoenix, including that of the other named Defendants in this case.

172. The Phoenix Defendants, while acting as agents and employees for the Phoenix Police Department, owed a duty to Stephan to perform their responsibilities as officers of the law without the use of excessive force.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

20

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

173.     The Phoenix Defendants, while acting as agents and employees for Phoenix Police Department, owed a duty to Plaintiff to act objectively reasonably under the circumstances.

174.     The Phoenix Defendants' use of excessive force upon Plaintiff constitutes recklessness and/or negligence for which the Defendants are individually liable.

175.     The Phoenix Defendants' conduct, in using excessive force, constitutes negligence and gross negligence for which the Phoenix Defendants are individually liable.

176.     In taking the actions as described above, the Phoenix Defendants breached their duty to refrain from such unreasonable and indifferent conduct.

177.     As a direct and proximate result of Defendants' breach, Plaintiff sustained severe and permanent injuries, suffered extreme pain and suffering, continues to suffer from severe PTSD, and has extreme difficulty in maintaining or creating meaningful relationships.

178.     Defendants' acts and omissions set forth above, also demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Plaintiff and a high probability that substantial harm would result.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(Phoenix Defendants, City [vicarious liability])*

179.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

180.     To sue for intentional infliction of emotional distress, a claimant must show: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended or recklessly disregarded the certainty that the claimant would suffer emotional distress; and (3) the claimant suffered emotional distress. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 553, 905 P.2d 559, 562 (Ct. App. 1995).

181.     The Defendants engaged in extreme and outrageous conduct in attacking Plaintiff.

182.     All the Phoenix Defendants had a duty to intervene.

21

183. Through their conduct, the Defendants either intended or completely disregarded Plaintiff's dignity and constitutional rights and knew their conduct would lead Stephan to suffer emotional distress.

184. Thus, the Defendants are liable for intentional infliction of emotional distress.

## COUNT VIII
### BATTERY
*(Phoenix Defendants)*

185. Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

186. The Phoenix Defendants intentionally beat Plaintiff causing harmful or offensive contact with Plaintiff.

187. As a direct and proximate result of the Phoenix Defendants' harmful or offensive contact, Plaintiff suffered severe injuries.

188. These Defendants' acts constitute a battery upon Plaintiff in the above-described bodily contact was intentional, unauthorized, or grossly offensive in nature.

189. The acts and omissions of these Defendants were intentional, negligent, reckless, and unwarranted, and without any just cause or provocation.

190. Upon information and belief, Santana has had seventeen (17) prior use of force incidents as a sworn officer of the City of Phoenix Police Department.

191. Upon information and belief, his superiors have had knowledge of his involvement in multiple use of force incidents.

192. As a direct and proximate result of these Defendants' conduct, Plaintiff was deprived of his liberty, and was ultimately severely injured. The conduct described herein was undertaken by the Phoenix Defendants within the scope of their employment and under color of law such that their employer, Phoenix Police Department – and the City of Phoenix – are vicariously liable for their actions.

## COUNT IX
### NEGLIGENT HIRING, SUPERVISION, RETENTION, AND/OR TRAINING
*(Phoenix Defendants, Sullivan, City [Monell liability])*

193. Plaintiff incorporates the allegations in the foregoing paragraphs as though

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

fully set forth herein.

194.    Under Arizona law, an employer may be held directly liable for negligent hiring, retaining and supervision of their employees if: i) The employer knew or should have known the risk of hiring, supervising, and training a particular employee and, ii) The employer's negligence proximately caused the plaintiff's injury.

195.    Upon information and belief, the Phoenix Police Department through the City is ranked as the top policing agency in the nation for use of deadly and excessive force by officers.

196.    The United States Department of Justice (USDOJ) is investigating the Phoenix Police Department for systemic violations through their failure to properly train, investigate, or discipline officers.

197.    The City, through the Phoenix Police Department was negligent in their hiring, supervision, retention, and/or training of the Defendants.

198.    Defendant City and Defendant Sullivan have a duty to adequately train their police officers to protect members of the public.

199.    The Phoenix Defendants and Defendant Sullivan were acting under the color of state law.

200.    The Operation Orders of the Phoenix Police Department were not adequate to handle the usual and recurring situations that Phoenix Police officers face.

201.    As a result of the USDOJ investigation, the Phoenix Police Department received suggestions to increase the usage of de-escalation techniques and decrease the employment of unwarranted excessive force.

202.    Defendant City and Defendant Sullivan, undeniably failed to employ these suggestions from the USDOJ and maintains inadequate training.

203.    The acts, omissions, and conduct of the Defendants as described herein were the direct and proximate cause of the injuries of Plaintiff and violated Plaintiff's constitutional, statutory and common law rights as guaranteed by the law and Constitution of the State of Arizona.

///

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

23

## JURY TRIAL DEMAND

204.    Plaintiff hereby demands a jury trial in this matter as to all claims and against all Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court enter judgment against the Defendants and in favor of the Plaintiff, as follows:

a)    For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b)    For all other non-pecuniary damages as to be proven at trial;

c)    For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

d)    For pre-and post-judgment interest to the extent provided by law;

e)    For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f)    For such other relief as this Court may deem proper.

**RESPECTFULLY SUBMITTED** this 5th day of March 2026.

**MILLS + WOODS LAW, PLLC**

By____*/s/ Sean A. Woods*_____
    Sean A. Woods
    Robert T. Mills
    5055 North 12th Street, Suite 101
    Phoenix, Arizona 85014
    *Attorneys for Plaintiff*

**ORIGINAL** filed this 5th day of March 2026
via AZTurboCourt with the Clerk of the
Maricopa County Superior Court

_____*/s/ Ben Dangerfield*_____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

24

CLERK OF THE SUPERIOR COURT
FILED

APR 06 2026   4:02PM

T. Wilson, Deputy

T. Scott Legal Support Services
Gary Steiner  ID#  MC 7767
(480) 227-7297
Tscottlegal2007@aol.com

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

In re the matter of:                )
                                    )
LITTLE JOE LAGEMAN, et al,          )
                                    )        Case No: CV2026-004816
       Plaintiff(s),                )
                                    )        **CERTIFICATE OF SERVICE**
v.                                  )
                                    )
CITY OF PHOENIX, et al.,            )
                                    )
       Defendant(s).                )
_____ )

1.    I, Gary Steiner, swear that I am currently registered as a Private Process Server pursuant to Rule 4(c) of the Arizona Rules of Civil Procedure. I further swear that on March 27, 2026, I received; Summons, Certificate Of Compulsory Arbitration and a Plaintiff's First Amended Complaint from The Plaintiff(s).

2.    I then proceeded to successfully serve the above described documents on Cynthia Baca,. Special Deputy City Clerk at City Of Phoenix, 200 W. Washington St., 15th Fl. Phoenix, AZ on March 27, 2026 at approximately 1:39 pm. I verified she could accept service and served her.

3.    This is considered to be personal service.

4.    The fee I charged for this service was $90.

**I declare under the penalty of perjury that the foregoing is true and correct**

_____                    4/6/26
Gary Steiner                               Date

Page 1

# Exhibit B

OFFICE OF THE CITY ATTORNEY
JULIE M. KRIEGH, City Attorney State Bar No. 021175
200 West Washington, Suite 1300
Phoenix, Arizona 85003-1611
Telephone (602) 262-6761
law.civil.minute.entries@phoenix.gov

Benjamin J. Barr, Bar No. 040376
Assistant City Attorney
*Attorneys for Defendant City of Phoenix*

## SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR MARICOPA COUNTY

| | |
|---|---|
| LITTLE JOE LANGEMAN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PHOENIX, a governmental entity; MICHAEL SULLIVAN, Chief of the Police Department; ADRIAN NICOLAS ORTIZ SAMAGIEGO and JANE DOE SAMANIEGO, a married couple; DIEGO SANTANA and JANE DOE SANTANA, a married couple; OFFICER RODRIGUEZ #10345 and JANE DOE RODRIGUEZ, a married couple; and JOHN and JANE DOES I-X,<br><br>Defendants. | Case No. CV2026-004816<br><br>**NOTICE OF FILING OF REMOVAL**<br><br>(Assigned to the Honorable Frank Moskowitz) |

Defendant City of Phoenix, by and through undersigned counsel, and pursuant to 28 U.S.C. §1441, et seq., hereby notify this Court that it has filed a Notice of Filing of Removal of this action to the United States District Court for the District of Arizona.

A copy of the Notice of Removal filed on April 22, 2026, is attached as **Exhibit A**.

…

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

RESPECTFULLY SUBMITTED this 22nd day of April, 2026.

JULIE M. KRIEGH, City Attorney


By: /s/ *Benjamin J. Barr*
Benjamin J. Barr
Assistant City Attorney
*Attorneys for Defendant City of Phoenix*


ORIGINAL of the foregoing electronically filed with the court and a COPY electronically served this 22nd day of April, 2026, to:

MILLS + WOODS LAW, PLLC
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

By: /s/ *M. Elena Sandoval*
4909-3389-1999, v. 1

- 2 -