OFFICE OF THE CITY ATTORNEY
JULIE M. KRIEGH, City Attorney State Bar No. 021175
200 West Washington, Suite 1300
Phoenix, Arizona 85003-1611
Telephone (602) 262-6761
law.civil.minute.entries@phoenix.gov

Benjamin J. Barr Bar No. 040376
Assistant City Attorney
Vanessa M. Tucker, State Bar No. 024455
*Attorneys for Defendants City of Phoenix,*
*Adrian Nicolas Ortiz Samaniego and Diego Santana*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Little Joe Lageman, | Case No. 2:26-cv-02779-ROS-ASB |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| City of Phoenix, et al., | *(Assigned to the Honorable Roslyn O. Silver and the Honorable Alison S. Bachus, U.S. Magistrate Judge)* |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, City of Phoenix Police Officers Adrian Nicolas Ortiz Samaniego and Diego Santana ("Defendant Officers") and the City of Phoenix ("Defendant City" or "the City") (collectively "Defendants"), through undersigned counsel, move to dismiss all of Plaintiff Little Joe Lageman's ("Plaintiff") claims against them with prejudice.

…

…

1

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.      FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff alleges that on March 29, 2024, while he was walking down the street, Defendant Santana aggressively drove his police vehicle, jumped out, and "was ready to attack." (Doc. 1-3, Plaintiff's First Amended Complaint, ¶¶ 39-40, 51.) Defendant Santana had just responded to a hit and run and was attempting to locate the suspect involved. (Doc. 1-3 ¶ 41.) Plaintiff alleges that after stopping his vehicle, Defendant Santana asked him where he was coming from. (Doc. 1-3 ¶ 51.) Plaintiff immediately told Defendant Santana that he had a gun and was holding his hands up. (Doc. 1-3 ¶ 55.)  Plaintiff then alleges that Defendant Santana asked Plaintiff to place his hands on his head three times and to face away from him. (Doc. 1-3 ¶¶ 56-57, 59, 63.) Plaintiff claims that Defendant Santana was "giving conflicting directives." (Doc. 1-3, ¶ 63.) Plaintiff further claims that after he placed his hands on his head, he was then told to go to his knees and to get on his stomach. (Doc. 1-3, ¶¶ 67, 70.) During this interaction, Plaintiff claims that Officers pointed their guns at him the whole time.  (Doc. 1-3, ¶ 75.) Plaintiff alleges that Defendant Santana, Defendant Samaniego and Officer Rodriguez "tackled" him and "slammed his head into the pavement and pushed his face into the concrete, chipping his tooth." (Doc. 1-3, ¶ 75.)  Plaintiff further alleges that "he did not resist" and that "the video shows this." (Doc. 1-3, ¶¶ 76-77.)

Plaintiff alleges that Defendant Santana based his investigation on an "EERIE FEELING" (sic) and essentially unlawfully arrested and charged Plaintiff (Doc. 1-3 ¶¶ 80-81, 95-99.) Plaintiff alleges that the Defendants arrested him without probable cause.  He quotes Defendant Samaniego's probable cause statement in his First Amended Complaint to demonstrate that, however Defendant Samaniego's statement rises to the level of probable cause. (Doc. 1-3 ¶ 100.)

---

[1] The versions of the facts presented in Plaintiff's First Amended Complaint are contradicted by Defendant Officers' body-worn camera and the police reports and therefore do not comply with Fed. R. Civ. P. 11(b)(3) (By presenting to the court a pleading, an attorney certifies that the factual contentions have evidentiary support.) Upon information and belief, Plaintiff was in possession of the body-worn camera footage prior to the filing of his lawsuit.

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

Plaintiff's version of events in the First Amended Complaint is contradicted by Officer Santana's body-worn camera footage which is incorporated by reference into Plaintiff's First Amended Complaint. (Doc. 1-3, ¶¶40, 42, 46, 47, 48, 50-77, 79.) While Officer Santana attempted to stop and speak to Plaintiff, Plaintiff continued walking in the opposite direction of Officer Santana and was saying "I'm just walking, bro." (Ex. A, Officer Santana body-worn camera, 19:54:05–19:54:13.)   Once stopped, Plaintiff put his hands up in the air and told Officer Santana that he had a gun on him. (Ex. A, 19:54:14-19:54:17.) Immediately, Officer Santana told Plaintiff to put his hands on his head and to face away from him. (Ex. A, 19:54:18-19:54:20.)   Instead of complying with Officer Santana's commands, Plaintiff argued with Officer Santana for twenty-one seconds. (Ex. A, 19:54:21-19:54:52.) During those twenty-one seconds, Officer Santana commanded Plaintiff to put his hands on his head eleven times before Plaintiff complied. (Ex. A, 19:54:18-19:54:52.)

Fearing that Plaintiff posed an immediate threat, Officer Santana continued to give Plaintiff commands to which Plaintiff did not comply and instead argued with Officer Santana. (Ex. A, 19:54:52-19:55:33.)   Officer Santana told Plaintiff to get on his knees at least five times over the course of forty seconds before Plaintiff complied. (Ex A., 19:54:52-19:55:33.)

As Plaintiff continued to pose a threat to officers and the community, Officer Santana then told Plaintiff to get on his stomach. (Ex A., 19:55:34-19:54:36.)  Plaintiff continued to argue with Officer Santana.  (Ex A., 19:55:36.) For over one full minute, Plaintiff continuously failed to obey commands by Officer Santana.  (Ex. A, 19:55:36-19:56:39.)  He continuously argued with Officer Santana and the other officers who had responded as backup, namely Officer Samaniego and Officer Rodriguez. (Ex. A, 19:55:36-19:56:39.)

After disobeying repeated commands for more than two and a half minutes, Plaintiff finally complied by lying on the ground, allowing Officers Santana, Samaniego, and Rodriguez to place him in handcuffs and detain him. (Ex. A, 19:56:41–19:57:25.) Contrary to Plaintiff's assertions, the body-worn camera footage clearly shows that he continued to resist during this detention. (Ex. A, 19:56:41–19:57:25.) When officers attempted to bring his right arm behind his back, Plaintiff tensed his arm and pulled it away from them at least twice. (Ex.

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

A, 19:56:47–19:56:56.) He also bent his left arm and attempted to pull it underneath his torso. (Ex. B, Samaniego BWC, 19:56:55–19:56:58.) Plaintiff then continued resisting by lifting his head toward the officers, flailing his body, and arguing throughout the encounter. (Ex. A, 19:56:53–19:56:56.) Plaintiff's *formal* arrest occurred only after the victim later identified him as the suspect. After being handcuffed, Plaintiff claims that his tooth was chipped during the interaction. (Doc. 1-3 ¶ 75.) In response, officers called the Phoenix Fire Department to the scene to examine Plaintiff. When the Fire Department arrived and attempted to examine Plaintiff, he was uncooperative. (Ex. C, Officer Santana's second body worn camera, 20:04:32-20:05:23.)  Plaintiff told the EMT that the police chipped his front tooth. (Ex. C, 20:04:49-20:04:54.)  The EMT asked Plaintiff to smile so that he could see his teeth, to which the EMT stated that he did not see a chipped tooth. (Ex. C, 20:04:49-20:04:54.) Plaintiff then refused treatment by the Fire Department. (Ex. C, 20:04:57-20:05:23.)

Shortly thereafter, Officer Johnson arrived on scene to conduct a show up identification procedure with the victim.  (Ex. D, Officer Keith Johnson, 20:07:20-20:07:26.)  At that time, the victim positively identified Plaintiff as the person who committed the hit and run. (Ex. D, 20:07:20-20:07:26.)  Thereafter, Plaintiff was charged with the hit and run and resisting arrest. *State of Arizona v. Little Joe Lageman*, No. 20248001195 (City of Phoenix Mun. Ct., June 14, 2024) [2]  The charges were submitted to the Phoenix Municipal Court. *Id.* On April 14, 2025, the case against Plaintiff was dismissed by the Phoenix Municipal Court. *Id.*

## II.    LEGAL ARGUMENT

### A.  Standard for Stating a Claim Under Federal Law

Pursuant to federal law, to state a claim upon which relief can be granted, a complaint must contain sufficient factual allegations to support the claims asserted and not just "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A court is "not bound to accept

---

[2] The Court may take judicial notice of state criminal court records without converting the instant motion into a motion for summary judgment. *See Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1064 n. 7 (9th Cir.1998).

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

as true a legal conclusion couched as a factual allegation." *Id*., quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor does a complaint suffice if it tenders "naked assertion[s] devoid of 'further factual enhancement.'" *Id*. (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. The Court is not required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). Causes of action that fail to state a claim upon which relief can be granted are subject to dismissal under Fed. R. Civ. P. 12(b)(6).

### B. The Court Can Rely on Officers Body Worn Camera Footage

Normally, "[a]s a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). "[I]f a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); see Fed. R. Civ. P. 12(d). The court may, however, consider "matters of judicial notice [ ] without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908. A "court may take judicial notice of matters of public record ..., [b]ut a court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018) (quotation marks and citations omitted).

One exception to this rule is where the "authenticity is not contested, and the plaintiff's complaint necessarily relies" on the evidence. *Sams v. Yahoo! Inc*., 713 F.3d 1175, 1179 (9th 2013). It is within the Court's discretion to consideration evidence. *Sternberger v. Gilleland*, 2014 WL 3809064, at *4 (D. Ariz. Aug. 1, 2014). The doctrine of incorporation by reference

5

stops plaintiffs "from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *C.B. v. Moreno Valley Unified Sch. Dist.*, 544 F. Supp. 3d 973, 988-89 (C.D. Cal. 2021) (quotations omitted) (citing *Khoja*, 899 F.3d at 1002). "Defendants may incorporate a document if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id*. (quotations omitted). Courts within this Circuit have considered body-camera footage when ruling on a motion to dismiss because the "complaints necessarily relie[d] on the circumstances surrounding" the incident alleged in the complaint. *Lihosit v. Flam*, 2016 WL 2865870, at *3 (D. Ariz. May 17, 2016); see also *Covert v. City of San Diego*, 2017 WL 1094020, at *5 (S.D. Cal. Mar. 23, 2017); *Raudelunas v. City of Vallejo*, No. 2:21-cv-00394-KJM-JDP, 2022 WL 329200, at *1 (E.D. Cal. Feb. 3, 2022); *Saved Magazine v. Spokane Police Dep't*, 505 F. Supp. 3d 1095, 1103 (E.D. Wash. 2020), aff'd, 19 F.4th 1193 (9th Cir. 2021), cert. denied 142 S. Ct. 2711 (2022).

Here, Plaintiff's relies extensively on the body-worn camera footage of responding officers in formulating his First Amended Complaint. Repeatedly, throughout the Complaint, Plaintiff refers to statements and facts that could only be revealed through watching the body-worn camera footage (Doc. 1-3, ¶¶40, 42, 46, 47, 48, 50-77, 79.) The First Amended Complaint even quotes parts of the body-worn camera footage in paragraphs 51, 52, and 54. In paragraph 77, Plaintiff attempts to add support to his claims by stating, "the video shows this."

In light of Plaintiff's extensive reliance on selective quotations from his conversations with the Officers, and other statements and alleged facts recited from the body-worn camera footage, the Court should permit Defendants to introduce the full context of those interactions in support of their motion to dismiss. Providing the entirety of the Officers' engagement with Plaintiff is essential to ensure an accurate and fair representation of the facts. Importantly, doing so does not convert the motion to dismiss into a motion for summary judgment, as the materials offered are integral to and referenced in the Complaint.

…

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

### C. Officers Used a Reasonable Amount of Force

An excessive force claim in the course of an arrest is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Objective reasonableness is determined based on the facts and circumstances at the moment of arrest without reference to the underlying intent or motivation of the officer. *Id. at 397*. Most importantly, the reasonableness of any particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id. at 396*. An excessive force claim involves "balancing the 'nature and quality of the intrusion' against the 'countervailing governmental interests at stake.'" *Green v. City & Cnty. of S.F.*, 751 F.3d 1039, 1049 (9th Cir. 2014) (citing, *Graham*, 490 U.S. at 396). Factors courts should consider when assessing the government interests at stake include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

#### i.    *Nature and Quality of the Intrusion*

"To gauge the type and amount of force used," courts should assess "the risk of harm and the actual harm experienced." *Sabbe v. Washington Cnty. Bd. of Commissioners,* 84 F.4th 807, 821 (9th Cir. 2023) (quoting *Nelson v. City of Davis*, 685 F.3d 867, 879 (9th Cir. 2012)). "The greater the risk of harm and the actual harm involved, the greater the governmental interest must be to justify the use of force." *Id*.

Here, the amount of force used by Defendant Officers was minimal at most. It was Plaintiff who said he had a gun and continuously disobeyed commands of the Defendant Officers. It took repeated commands for Plaintiff to put his hands on his head. It took repeated commands for Plaintiff to get on his knees.  It took repeated commands for Plaintiff to lay on his stomach.  All while he had a gun on his person.

Once Plaintiff finally laid onto his stomach, Defendant Officers attempted to handcuff him.  Plaintiff then proceeded to pull one of his arms away from Defendant Officers. He tried to hide his other arm under his body so they could not handcuff him.  Plaintiff continued to

7

struggle with officers by lifting his head and moving the rest of his body. All while he had a gun on his person.

### ii. *Severity of the Crime*

Defendants concede for the purpose of their Motion to Dismiss the severity of the crime at the time Defendant Officers arrived on scene was minor. Officers were called to hit and run in the neighborhood. However, the fact that an individual who fit parts of the description of the suspect was walking in the vicinity of the crime scene was significant to Defendant Officers. Their concern was heightened when Plaintiff continued to walk away from Officer Santana and when he said he had a gun.

### iii. *Plaintiff was Actively Resisting Arrest*

Plaintiff actively resisted Defendant Officers throughout the encounter. When officers initially got near Plaintiff on the ground, Plaintiff immediately tensed his right arm and pulled it away from Defendant Officers. (Ex. A, 19:56:41-19:57:25.) At the same time, Plaintiff bent his left elbow and attempted to put his arm underneath his body. (Ex. B, 19:56:55-19:56:58.) He then kept trying to lift his head and wiggle his body. (Ex. A, 19:56:41-19:57:25.) As he was doing so, he was continuously arguing with Defendant Officers. (Ex. A, 19:56:41-19:57:25.)

### iv. *Threat Posed by Plaintiff*

Whether the suspect posed an immediate threat to others is the most important factor in the court's analysis. *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir. 2017)). Because Plaintiff was refusing to speak Officer Santana, walking away from a hit and run scene, walking away from Officer Santana and stated that he had a gun, Plaintiff posed a legitimate and immediate threat to the safety of Defendant Officers as well as the surrounding community, a residential neighborhood. His refusal to comply with repeated instructions over at least two minutes created an unpredictable and dangerous situation. These actions not only hindered the officers' ability to safely and effectively investigate the hit and run but also jeopardized the safety of Defendant Officers.

8

Considering Plaintiff's repeated resistance, refusal to comply with lawful commands, and physical struggle with officers, the amount of force used by Defendant Officers was objectively reasonable under the circumstances. Their actions were measured, proportional, and aimed at safely gaining control of a non-compliant individual who admittedly had a gun. Accordingly, Plaintiff's excessive force claim should be dismissed with prejudice.

### D. Officers had Probable Cause

The existence of probable cause defeats Plaintiff's Fourth Amendment illegal seizure and false arrest claims. *Kraus v. Pierce Cnty.*, 793 F.2d 1105, 1109 (9th Cir. 1986) (illegal seizure); *Mosqueda v. Cnty. of Los Angeles*, 171 F. App'x 16, 17 (9th Cir. 2006) (false arrest.) Probable cause "is not a high bar[.]" *Kaley v. United States*, 571 U.S. 320, 338, (2014). "It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Id.* "Probable cause to arrest exists when [under the totality of circumstances,] officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been ... committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91, (1964)). Probable cause is measured by an objective standard based on the information known to the arresting officer. *Id* "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Officers had probable cause to arrest Plaintiff for at least two crimes.  Under Arizona Revised Statutes 28-644(A)

> the driver of a vehicle that collides with a vehicle that is unattended on public or private property shall immediately: 1. Stop. [and] 2. Either: (a) Locate and notify the operator or owner of the vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle. (b) In a conspicuous place in the vehicle struck, leave a written notice giving the name and address of the driver and of the owner of the vehicle doing the striking.

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

9

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

In addition, a person commits resisting arrest by "intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by using or threatening to use physical force against the peace officer or another." A.R.S. § 13-2508(A)(1). Here, Plaintiff was using physical force against the officers when he tensed up his right arm, when he pulled his right arm away from officers, when he was hiding his left arm under his body, and when he moved his head and body all to not be handcuffed.

Plaintiff's Fourth Amendment claims fail because Officers had probable cause to detain and him based on multiple independent reasons. Here, the victim's vehicle was parked on a public roadway and was struck. The victim saw a Hispanic male wearing a dark shirt flee from the scene. The victim relayed this information to both the 911 call taker as well as to Officer Samaniego when the victim first spoke to him. (Ex. E, Officer Samaniego's body worn camera, 19:51:23 – 19:55:13.) Officer Samaniego then ran towards Officer Santana and Plaintiff who was wearing a dark shirt and was walking in the vicinity of the hit and run. *Id.* When Officers attempted to speak to Plaintiff, he was walking away from them and when he stopped, he told them he had a gun. He then proceeded to disobey multiple commands over a two-minute interaction. Once he finally complied with laying on his stomach, he resisted arrest, giving Defendant Officers another independent basis to detain him. Later, the victim positively identified Plaintiff as the person who struck his vehicle and Plaintiff was arrested. Because the Officers had probable cause to arrest Plaintiff, his claims under the Fourth Amendment are legally insufficient and should be dismissed with prejudice as a matter of law.

### E.   Officers are Entitled to Qualified Immunity

The United States Supreme Court has held that "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78-79 (2017) (internal quotation marks omitted). A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (emphasis added and internal quotation marks omitted).

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

Qualified immunity thus protects "all but the plainly incompetent or those who knowingly violate the law." *Rico v, Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020), quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The plaintiff bears the burden of proof to show that a right was clearly established. *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021). Thus, unless Plaintiff can show that each Officer violated clearly established law under these specific circumstances, then qualified immunity applies.

Although "[the United States Supreme] Court's case law 'do[es] not require a case directly on point' for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White*, 580 U. S. at 79. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal quotation marks omitted). In analyzing whether rights are clearly established, the Court must look to then-existing "cases of controlling authority" or, absent such cases, to a "robust consensus" of persuasive authorities. *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 617 (2015); *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021). The court must consider whether "the violative nature of [the defendant's] particular conduct is clearly established . . . in light of the specific context of the case.'" *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020), quoting *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016)). The United States Supreme Court has insinuated that constitutional rights can only be clearly established with on-point Supreme Court precedent and that controlling Circuit precedent is not sufficient to demonstrate clearly established law. See *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5-8 (2021). Plaintiffs bear the burden of demonstrating that a right was clearly established prior to the claimed unlawful conduct by the officer. See *McCrae v. City of Salem*, 2023 WL 2447438, at *5 (D. Or. Mar. 10, 2023). Even an officer who reasonably, but mistakenly, believed that his conduct did not violate a clearly established constitutional right will receive qualified immunity. See *Saucier v. Katz*, 533 U.S. 194, 205-06 (2001).

Here, based on the facts, Defendant Officers are entitled to qualified immunity on all of Plaintiff's Fourth Amendment claims.  First, in excessive force cases, the analysis of

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

whether the right was violated and whether the right was clearly established are not identical. *Saucier*, 533 U.S. at 199-200. "The determination whether a right was clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Nelson v. City of Davis*, 685 F.3d 867, 883 (9th Cir. 2012) (quoting *Saucier* at 201). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier* at 202.

It would not have been clear to Defendant Officers that the amount of force they used to take Plaintiff into custody was unlawful based on existing Ninth Circuit case law. *See, e.g., Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (pinning of arrestee to the floor and handcuffing her was a reasonable amount of force); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921–22 (9th Cir. 2001) (twisting plaintiff's left arm behind her with enough force to lift her off the ground and break her watch band while attempting to handcuff her was held to be reasonable where the plaintiff refused to show transit identification upon request, refused to hand over purse when warned that non-compliance would lead to arrest, stiffened her arm and attempted to pull free when the officer grabbed her arm); *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994) ("pain compliance" arrest technique which caused varying degrees of injury to arrestees including bruises, a pinched nerve, and a broken wrist did not constitute excessive force). Specifically, when Defendant Officers attempted to place Plaintiff in handcuffs, he actively resisted by tensing his right arm and pulling it away from officers, by trying to hide his left arm under his body and moving his head and body around. Contrary to any claim of excessive force, the officers did not push Plaintiff's face into the ground chipping his tooth. Throughout the encounter, Plaintiff was failing to obey commands and yelling at the officers. The officers de-escalated a potentially dangerous situation and maintained control using minimal force.  Officer Santana was able to handcuff his right arm while Officer Rodriguez applied pressure to Plaintiff's body to prevent him from flailing on the ground.  Once Plaintiff was handcuffed, he was escorted to the patrol vehicle without incident.

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

### F.  **Plaintiff Did Not Adequately Plead a *Monell* Claim**

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.' " *Id*. (citation omitted).

A plaintiff may establish *Monell* municipal liability under § 1983 even where the municipality does not expressly adopt the alleged policy. *See Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). There are three ways such liability can attach: (1) "if an employee commits a constitutional violation pursuant to a longstanding practice or custom;" (2) "when the person causing the violation has final policymaking authority;" *id*., and (3) "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Rather, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id*. At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts" to provide the opposing party with fair notice so it can defend itself. *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Plaintiff pleads that Defendant City lacked an official policy, failed to train and supervise Defendant Officers, and had widespread unconstitutional customs. Plaintiff's *Monell* claim is insufficiently plead. Plaintiff cannot hold Defendant City liable under *Monell*

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

for the lack of an official policy alone. Rather, "[i]f there is no official policy in place that caused the constitutional violation, plaintiff must show the existence of a custom via the existence of a widespread practice that is permanent and well-settled. *Altamirano v. City of Tucson*, No. CV-15-00169-TUC-RM, 2020 WL 6827740, at \*2 (D. Ariz. Nov. 20, 2020) (citing *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989)). Alternatively, a plaintiff can show that "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

To establish that *Monell* liability under a theory unconstitutional policies and customs, a plaintiff must show (1) that [the plaintiff] possessed a constitutional right of which [they] w[ere] deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and, (4) that the policy is the "moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "A longstanding practice or custom is one that is so 'persistent and widespread' that it constitutes a 'permanent and well settled' governmental policy." Id. "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir. 1989).

Similarly, to state a claim for failure to train, a plaintiff must show (1) "the existing training program" is inadequate "in relation to the tasks the particular officers must perform"; (2) the officials have been deliberately indifferent "to the rights of persons with whom the police come into contact"; and (3) the inadequacy of the training "actually caused the deprivation of the alleged constitutional right." *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations and quotation marks omitted). "A pattern of similar

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

constitutional violations by untrained employees is 'ordinarily necessary'" to establish that the failure to train or supervise is a deliberate policy. *Connick* 563 U.S. at 62. A plaintiff must allege facts to show that the official disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights." *Hyde v. City of Wilcox*, 23 F.4th 863, 874 (9th Cir. 2022)

Regardless of whether Plaintiff bases his *Monell* claim on the existence of a widespread and permanent practice or a failure to train, it is insufficiently pled and must be dismissed. The First Amended Complaint fails to identify instances or facts to support this theory. Accordingly, Plaintiff has failed to allege facts sufficient to plausibly support the existence of a municipal policy, custom, or deliberate indifference necessary to sustain a Monell claim. Dismissal under Rule 12(b)(6) is therefore warranted.

### G.    Plaintiff's *Monell* Claim Fails as There are No Underlying Constitutional Violations

Even if the Court finds that Plaintiff adequately plead his *Monell* claims, the Court must still dismiss it, as for the reasons argued above, Defendants did not violate Plaintiff's constitutional rights. *See Lockett v. Cnty. of Los Angeles,* 977 F.3d 737, 741 (9th Cir. 2020) (holding that *Monell* requires a plaintiff to show an underlying constitutional violation caused by the peace officer.)

### H.    Plaintiff's Malicious Prosecution Claim Fails as Police Had Probable Cause to Arrest Plaintiff

To succeed on a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person. *Chiaverini v. City of Napoleon, Ohio, 602 U.S. 556 (2024).* The United States Supreme Court in *Thompson v. Clark* listed the elements of a malicious prosecution claim as: (i) the suit or proceeding was "instituted without any probable cause;" (ii) the "motive in instituting" the suit "was malicious," which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) a favorable termination of the underlying criminal prosecution. *Thompson v.*

*Clark*, 142 S.Ct. 1332 at 1338 (2022). This 2022 decision established that the constitutional violation is "a type of unreasonable seizure: an arrest and detention of a person based on a criminal charge lacking probable cause." *Chiaverini* at 556. Courts must evaluate malicious prosecution claims "charge by charge" when multiple charges are involved. *Id.*

The presence of probable cause is an absolute defense to a § 1983 malicious prosecution claim. *Evans v. County of Los Angeles,* 529 F.Supp.3d 1082 (2021); *See also, Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054-55 (9th Cir. 2009). In the context of malicious prosecution, probable cause refers to "the subjective and objectively reasonable belief that the defendant committed a crime." *Westwood v. City of Hermiston*, 787 F.Supp.2d 1174 (2011).

Additionally, when a police officer is not the person instigating charges, he/she cannot be liable. When "the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time," they absolve from liability any law enforcement officers who may have aided pre-indictment. *Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006). For example, in *Smiddy v. Varney*, 665 F.2d 261, 267 (9th Cir. 1981), the Ninth Circuit held that, "where police officers do not act maliciously or with reckless disregard for the rights of an arrested person, they are not liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted."

Here, Defendants had probable cause to arrest Plaintiff for the hit and run. Plaintiff was walking in the vicinity of the hit and run. He was wearing clothing that fit the description provided to Defendants by the victim. Most importantly, the victim identified the Plaintiff as the person who committed the hit and run.

Likewise, Defendants had probable cause to arrest Plaintiff for resisting arrest. Plaintiff was argumentative with Defendant Officers from the onset of their contact with him. He persistently failed to obey commands to put his hands on his head, to get to his knees and to lay on his stomach. Once he laid on his stomach, he tensed his right arm and pulled it away from Officer Santana. He attempted to put his left arm under his body to avoid being

16

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

handcuffed.  He was moving his head and his body in a manner that caused the police to have a difficult time handcuffing him.

Notwithstanding the independent probable cause, the prosecution of the criminal charges was initiated by a City of Phoenix prosecutor who reviewed the case and filed a criminal Complaint on June 14, 2024.  Plaintiff has provided no facts whatsoever to support whether the prosecutor was unduly influenced by Defendants to charge the Plaintiff.  For all of these reasons, Plaintiff's malicious prosecution claim fails.

### I.   Defendant Officers Did Not Have a Duty to Intervene as There was No Constitutional Violation

Police officers have a duty to intervene when their fellow officers violate the constitutional rights of a suspect or other citizen, but officers can be held liable for failing to intercede only if they had an opportunity to intercede. *Peck v. Montoya*, 51 F.4th 877 (9th Cir. 2022). An official whose individual actions do not themselves rise to the level of a constitutional violation may be held liable only if the official is an "integral participant" in the unlawful act. *Id.* A failure to intervene theory requires an underlying constitutional violation. *Id.*

Plaintiff has failed to allege any facts that would rise to the level of a constitutional violation.  None of the officers who responded as backup to Officer Santana had a duty to intervene and cannot be held liable for not intervening because there was no constitutional violation.  Defendants were all assisting in the probable cause arrest of Plaintiff so how could they be liable for using excessive force and that they each failed to intervene? That is nonsensical   Accordingly, this claim must be dismissed.

### J.   Plaintiff's State Claims Are Barred By Arizona's Notice of Claim Statute

Under A.R.S. § 12-821.01, a claimant must file a timely notice of claim with a public entity before filing a lawsuit based on any claims made under Arizona law. *See Stulce v. Salt River Project Agr. Imp. & Power Dist.*, 197 Ariz. 87, 94, 3 P.3d 1007, 1014 (App. 1999). The notice of claim statute specifically provides:

17

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

Persons who have claims against a public entity or a public employee **shall file claims with the person or persons authorized to accept service for the public entity or public employee . . . within one hundred eighty days after the cause of action accrues.** . . . Any claim that is not filed within one hundred eighty days after the cause of action accrues **is barred and no action may be maintained thereon**.

A.R.S. § 12-821.01(A) (emphasis added). A cause of action accrues for purposes of A.R.S. § 12-821.01, "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B). If a plaintiff fails to comply with any of the requirements of A.R.S. § 12-821.01, his or her claims are barred. A.R.S. § 12-821.01; *Deer Valley Unified School Dist. No. 97 v. Houser*, 214 Ariz. 293, 295, ¶ 6, 152 P.3d 490, 492 (2007).

Plaintiff's claims of negligence, gross negligence, battery, intentional infliction of emotional distress and negligent hiring, training and supervision are all claims under Arizona state law. All of which began to accrue on March 29, 2024, the date of his arrest.

Plaintiff served the City with a Notice of Claim on October 9, 2025, via email. Plaintiff attempted to serve Officer Samaniego with a Notice of Claim via certified mail to his mother's address on October 14, 2025.[3] (Ex. F, Declaration of Officer Adrian Samaniego). Upon information and belief, Plaintiff served Officer Santana in the middle of October 2025. However, the 180-day deadline expired on September 25, 2024. Accordingly, each of these state law claims are barred by A.R.S. § 12-821.01.

### K. Plaintiff's Arizona State Claims are Barred by the Statute of Limitations.

Under Arizona law, all lawsuits alleging claims against public entities pursuant to state law must "be brought within one year after the cause of action accrues and not afterward." A.R.S. § 12-821. "A cause of action accrues under A.R.S. § 12–821 when a plaintiff discovers or reasonably should have discovered that an injury was caused by the government's action."

---

[3] Notably, under the statute, certified mail is not a valid method of service of a Notice of Claim even if timely. [CITE]

18

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

*Canyon del Rio Investors, L.L.C. v. City of Flagstaff*, 227 Ariz. 336, 340, 258 P.3d 154, 158 (App. 2011), *citing* A.R.S. § 12–821.01(B).

Plaintiff's claims of negligence, gross negligence, battery, intentional infliction of emotional distress and negligent hiring, training and supervision are all claims under Arizona state law.  All of which began accruing on March 29, 2024.  Plaintiff filed this lawsuit on February 3, 2026, almost two years after the date of accrual. (Doc 1-3, Plaintiff's Complaint.) The statute of limitations expired on March 29, 2025.  Plaintiff's state law claims are time barred and must be dismissed by this Court.

Alternatively, if the Court is not inclined to dismiss the negligence claims as requested above, Plaintiff's negligence claims fail under *Ryan v. Napier,* 245 Ariz. 54, 425 P.3d 230 (2018). In Arizona, plaintiffs cannot base a negligence claim on an intentional use of force nor on a law enforcement officer's negligent "'evaluation' of whether to intentionally use force." *Id.* at 236. Any negligence claim must be based on conduct independent of the intentional use of force. *Id.* at 238. Here, Plaintiff is trying to argue both, which is not appropriate.

## L.  **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that all claims in Plaintiff's Complaint against them be dismissed with prejudice.

RESPECTFULLY SUBMITTED this 26th day of June 2026.

JULIE M. KRIEGH, City Attorney

By:   /s/ *Vanessa M. Tucker*
    Vanessa M. Tucker
    Assistant City Attorney
    Benjamin J. Barr
    Assistant City Attorney
    *Attorney for Defendants City of Phoenix, Adrian Nicolas Ortiz Samaniego and Diego Santana*

19

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

## CERTIFICATION PURSUANT TO LRCIV 12.1(c)

Undersigned counsel for Defendants certifies to the Court that before filing this Motion, she met and conferred with counsel for Plaintiff by e-mail regarding the bases on which Defendants would be seeking to dismiss the Complaint. Undersigned counsel emailed Plaintiff's counsel on May 21, 2026, itemizing areas to confer. Undersigned counsel followed up on May 28, 2026, after receiving no response from Plaintiff's counsel. On May 29, 2026, Plaintiff's counsel emailed undersigned counsel stating that he would respond by Tuesday, June 2, 2026. Undersigned counsel did not receive a response on June 2, 2026, and, therefore, sent a follow-up email to Plaintiff's counsel on June 3, 2026. As of the date of the filing of this Motion, Plaintiff's counsel has not responded. Accordingly, the parties were unable to agree that the deficiencies of the remaining claims in the First Amended Complaint were curable in any part by a permissible amendment at this time.

**OFFICE OF THE CITY ATTORNEY**
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sean A. Woods
Robert T. Mills
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

I hereby certify that on June 26, 2026, a hard copy of the foregoing document was mailed to:

**Honorable Roslyn O. Silve**r
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 624
401 West Washington Street, SPC 59
Phoenix, Arizona 85003

**Honorable Alison S. Bachus**
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 323
401 West Washington Street, SPC 56
Phoenix, Arizona 85003

By:  *s/* M. Elena Sandoval
4908-8732-9971, v. 2

21

Lageman v. City of Phoenix, et al.
Case No. 2:26-cv-02779-ROS-ASB
Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

# **<u>Exhibit A</u>**

Body-Worn Camera Video – Officer Diego Santana

*Placeholder for Non-Electronic Exhibit*

Lageman v. City of Phoenix, et al.
Case No. 2:26-cv-02779-ROS-ASB
Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

# **Exhibit B**

Body-Worn Camera Video – Officer Adrian Samaniego

*Placeholder for Non-Electronic Exhibit*

Lageman v. City of Phoenix, et al.
Case No. 2:26-cv-02779-ROS-ASB
Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

# **Exhibit C**

Body-Worn Camera Video 2 – Officer Diego Santana
*Placeholder for Non-Electronic Exhibit*

Lageman v. City of Phoenix, et al.
Case No. 2:26-cv-02779-ROS-ASB
Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

# **<u>Exhibit D</u>**

Body-Worn Camera Video – Officer Keith Johnson
*Placeholder for Non-Electronic Exhibit*

Lageman v. City of Phoenix, et al.
Case No. 2:26-cv-02779-ROS-ASB
Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

# **<u>Exhibit E</u>**

Body-Worn Camera Video 2 – Officer Adrian Samaniego
*Placeholder for Non-Electronic Exhibit*

Lageman v. City of Phoenix, et al.
Case No. 2:26-cv-02779-ROS-ASB
Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

# **<u>Exhibit F</u>**

Declaration of Officer Adrian Samaniego

## DECLARATION OF ADRIAN SAMANIEGO

STATE OF ARIZONA     )
                               ) ss.
County of Maricopa     )

I, Adrian Samaniego, say and attest the following:

1. I am currently employed as a Police Officer with the Phoenix Police Department. I have been employed by the Phoenix Police Department since 2019.

2. On October 14, 2025, I learned that a package was delivered to my mother's residence in Phoenix, Arizona, that was addressed to me.

3. The package was sent via certified mail.

4. I do not live at the Phoenix, Arizona residence.

5. Upon retrieving the documents from my mother, the documents appeared to be a Notice of Claim related to an arrest of Little Joe Lageman that occurred on March 29, 2025.

6. Prior to October 14, 2025, I did not know that Mr. Lageman was asserting a claim against me or against the City of Phoenix related to the March 29, 2024 arrest.

7. I was never personally served with a notice of claim by Mr. Lageman, by a process server nor a deputy, nor has one been delivered to me at my residence.

8. I have never authorized any person or persons to accept service of process of a notice of claim for me.

1

2

9.      I have never been asked by anyone employed at the City of Phoenix whether he or she could accept service of process of a notice of claim or of a Summons and Complaint for me.

10.      I declare under penalty of perjury that the foregoing is true and correct. EXECUTED on this 5 day of June, 2026.

*Adrian Samaniego*

_____

Adrian Samaniego

2