Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Little Joe Lageman, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>City of Phoenix, a governmental entity; Michael Sullivan, Chief of the Phoenix Police Department; Adrian Nicolas Ortiz Samaniego and Jane Doe Samaniego, a married couple; Diego Santana and Jane Doe Santana, a married couple; Officer Rodriguez # 10345 and Jane Doe Rodriguez, a married couple; and, John and Jane Does I-X,<br><br>Defendants. | No.: CV-26-02779-PHX-ROS (ASB)<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(Assigned to the Honorable Roslyn O. Silver, and referred for all pretrial proceedings to the Honorable Alison S. Bachus) |

## I. INTRODUCTION

The United States Department of Justice spent three years investigating the Phoenix Police Department and concluded, in a 126-page report issued less than three months after the events at issue here, that the Department "uses excessive force, including unjustified deadly force," trains its officers "to use serious force to respond to hypothetical, not actual, danger," and suffers from "systemic problems ... that deprive people of their rights under the Constitution and federal law." (First Amended Complaint ("FAC") ¶¶ 19-21, 26, 29.) Three months earlier, Phoenix police officers stopped Plaintiff Little Joe Lageman as he walked to church, drew their weapons and kept them trained on him while he stood with

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

his hands raised and voluntarily told them where his lawfully carried firearm was located, and then tackled him, slammed his head into the pavement, and chipped his tooth, even though, as the First Amended Complaint alleges in detail, he was not resisting arrest. (FAC ¶¶ 39-77.) He spent five days in jail and more than a year fighting a criminal charge for a hit-and-run he did not commit, based on a suspect description that did not match him, before the charges were dismissed. (FAC ¶¶ 82-99, 155.)

Defendants' Motion to Dismiss ("Mot.") does not seriously grapple with these well-pled, specific factual allegations. Instead, it asks this Court to resolve disputed facts by reciting a narrative account of several minutes of body-worn camera footage, to grant qualified immunity before Plaintiff has had any opportunity for discovery, and to declare, in a footnote and without ever filing a motion under Rule 11, that Plaintiff's own counsel violated their duty of candor to this Court. None of that is appropriate on a Rule 12(b)(6) motion, and some of it is not appropriate at all. Sections III and IV below address these arguments claim by claim.

Plaintiff opposes dismissal of Counts I through V, his federal claims under 42 U.S.C. § 1983 for excessive force, municipal liability, malicious prosecution, and failure to intervene. In the interest of narrowing the issues before the Court, and consistent with counsel's obligation of candor, Plaintiff does not oppose dismissal of Counts VI through IX (Plaintiff's Arizona state-law claims) on notice-of-claim and limitations grounds, and does not oppose dismissal of the official-capacity claims against Defendant Sullivan as redundant of Plaintiff's claims against Defendant City of Phoenix. Those matters are addressed in Section V below and have no bearing on Plaintiff's federal claims, which are governed by a different statute of limitations period that has not expired.

**II. LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all well-pled factual allegations as true and construe them, together with all reasonable inferences, in the light most

favorable to Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is not a heightened pleading standard, and it is not an invitation to weigh competing evidence or resolve disputed facts. It asks only whether the facts alleged, if proven, would entitle Plaintiff to relief. *Id*. at 679.

## III. PRELIMINARY ISSUES

### A. The Court Should Disregard Defendants' Unsupported and Procedurally Improper Rule 11 Accusation.

In footnote 1 of their brief, Defendants accuse Plaintiff's counsel of violating Federal Rule of Civil Procedure 11(b)(3), in substance accusing counsel of misrepresenting facts to this Court. (Mot. at 2 n.1.) That accusation is unsupported and procedurally improper, and the Court should disregard it. Rule 11 does not permit a party to level a sanctionable-misconduct accusation against opposing counsel as an aside in an unrelated motion. "A motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). It must also be served on opposing counsel at least twenty-one days before it is filed with the Court, so that the accused party has a genuine opportunity to withdraw or correct the challenged material without penalty. *Id*.; *Barber v. Miller*, 146 F.3d 707, 710-11 (9th Cir. 1998) (informal notice of a perceived defect is not a substitute for service of an actual Rule 11 motion; the safe-harbor period runs only from service of the motion itself). Defendants never served a Rule 11 motion on Plaintiff's counsel, never afforded the twenty-one-day safe harbor, and never filed a separate motion for sanctions. Instead, they inserted a single footnote, asserted only "[u]pon information and belief" and unsupported by any accompanying evidence, accusing counsel of possessing contradictory footage before filing suit. That bare, procedurally unmoored assertion is not evidence, is not properly before the Court on this Motion, and has no place in a Rule 12(b)(6) brief. The Court should disregard it.

### B. The Body-Worn Camera Footage Cannot Be Used to Resolve Disputed Facts on a Rule 12(b)(6) Motion.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Defendants ask the Court to consider several body-worn camera videos on the theory that the footage is incorporated by reference into the First Amended Complaint. Even accepting that the doctrine applies, it does not do the work Defendants need it to do. The incorporation-by-reference doctrine exists so that a plaintiff cannot use it to "select[] only portions of documents that support [his] claims, while omitting portions of those very documents that weaken or doom [his] claims." *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th Cir. 2018). It is not a license for the Court to resolve genuinely disputed facts about what a video shows, or to credit one side's argumentative narration of ambiguous footage over the other's at the pleading stage. *Id.* at 999 ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute the facts stated in a well-pleaded complaint."). Here, the parties dispute what several minutes of body-worn camera footage depict: whether Plaintiff was "resisting" or reacting involuntarily while officers forced his arms behind his back, and whether the force used (guns drawn and trained on him throughout, then a multi-officer takedown that slammed his head into the pavement and chipped his tooth) was proportionate to a person who had already disclosed the location of his firearm, never reached for it, and, as the First Amended Complaint alleges, did not resist. (FAC ¶¶ 55, 60-61, 75-78.) That dispute cannot be resolved by narrative description in a legal brief. Defendants' own account of the footage, replete with argumentative characterizations such as Plaintiff "continued to pose a threat to officers and the community," illustrates the point: it is advocacy, not an undisputed fact subject to judicial notice.

Even under the summary-judgment "video evidence" doctrine that Defendants effectively invoke, video overcomes a plaintiff's version of events only when it "so utterly discredit[s]" that version that "no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is a summary-judgment standard, applied after discovery, and only where the footage is genuinely unambiguous. It has no application at the pleading stage, before Plaintiff has had any opportunity to participate in discovery, ensure that any

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

bodycam in Plaintiff's possession is the full and complete bodycam footage,[1] unedited footage from every officer present, along with the other evidence bearing on what occurred. To the extent Defendants believe the footage resolves this case in their favor, the proper vehicle is a motion for summary judgment after discovery, not a motion to dismiss.

**C. Defendants Compound the Violation: They Offer a Curated Set of Video Clips, Not the Complete Recordings, and Ask the Court to Fill the Gaps With Their Own Narration.**

Defendants' entire video narrative rests on a version of the incorporation-by-reference doctrine that they do not themselves follow. They quote *Khoja* for the rule that a party may not "select[] only portions of documents that support [its] claims, while omitting portions of those very documents that weaken or doom [its] claims." *Khoja*, 899 F.3d at 1002. They do not mention that this describes, almost exactly, what they did with the body-worn camera footage.

Defendants did not lodge the complete recordings and invite the Court to watch them. They lodged five exhibits and then selected roughly twenty discrete timestamp ranges out of several continuous minutes of footage per officer, several only two to four seconds long, and substituted their own narration for everything in between. (Mot. at 3-4 (Ex. A, 19:54:05-19:54:13, 19:54:14-19:54:17, 19:54:18-19:54:20, 19:54:21-19:54:52, 19:54:52-19:55:33, 19:55:34-19:54:36, 19:55:36, 19:55:36-19:56:39, 19:56:41-19:57:25, 19:56:47-19:56:56, 19:56:53-19:56:56; Ex. B, 19:56:55-19:56:58; Ex. C, 20:04:32-20:05:23, 20:04:49-20:04:54, 20:04:57-20:05:23; Ex. D, 20:07:20-20:07:26).)[2] The Court is never told what the footage shows in the seconds and minutes Defendants chose not to cite. Defendants cannot even keep their own timeline straight: one citation runs, as written, from 7:55:34 p.m. backward to 7:54:36 p.m. (Mot. at 3 (Ex. A, 19:55:34-19:54:36).) That

---

[1] Defendants' Exhibits A-E are cherry-picked "slices" from longer videos; they do not provide the entire context.

[2] Exhibit A is 3:36 long; Exhibit B is 5 seconds long; Exhibit C is 51 seconds long; Exhibit D is 8 seconds long; and, Exhibit E is 3:51 long. Exhibits B and E come from the exact same video. The corresponding length of videos in Plaintiff's possession are: Exhibit A is 8:14 long; Exhibit B/E is 8:00 long; Exhibit C is 7:47 long, and Exhibit D is 9:38 long.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

is not incorporation of the body-worn camera footage. It is incorporation of Defendants' edit of the footage, which is the precise maneuver *Khoja* forbids.

The doctrine does not become optional once the excerpted "document" is a video instead of a memo. Incorporation by reference reaches only what forms the basis of a plaintiff's claim or what the plaintiff has referred to extensively; "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). It exists to prevent a plaintiff from omitting inconvenient portions of a document he relies on. It does not let a defendant manufacture its own preferred version of events through selective excerpting. A district court applying *Khoja* just weeks before this filing put the point plainly: "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Cordova v. Huneault*, No. 25-cv-04685-VKD, 2026 WL 184598, at *4 (N.D. Cal. Jan. 23, 2026) (quoting *Khoja*, 899 F.3d at 1002, and declining to consider a defendant's partial exhibit offered on a Rule 12(b)(6) motion)[3]. That is exactly what Defendants attempt here: roughly twenty curated clips, stitched together with argumentative narration, offered as though they were the complete, unedited record.

Nor does the First Amended Complaint's general reference to body-worn camera footage rescue Defendants' excerpts. Incorporation by reference is anchored to what the plaintiff actually relied on in drafting the complaint, not to whatever a defendant later chooses to attach. "[E]xtraneous materials do not become integral parts of the complaint unless the plaintiff relied on them in drafting the complaint." *Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025) (vacating dismissal where the video and incident report defendants submitted were not what the plaintiff had relied on in drafting the complaint). Where, as here, a party asks the Court to weigh extraneous material that does not meet that standard, the Second Circuit has explained the choice is binary: the Court "must either ignore

---

[3] The *Cordova* Decision is attached hereto as Exhibit H for the Court's convenience

6

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

[extraneous] materials and resolve the motion [to dismiss] on the basis of the complaint alone or convert the motion to one for summary judgment." *Id*. at 407. The First Amended Complaint describes what happened and acknowledges that body-worn camera footage exists; it does not adopt Defendants' twenty-clip highlight reel, and Defendants cite no authority for the proposition that acknowledging the existence of body-worn camera footage hands a defendant a blank check to submit whatever portions of it, in whatever sequence, best support dismissal.

Even setting all of that aside, the excerpts still could not do the work Defendants need them to do. Video overcomes a plaintiff's well-pled version of events only where it "blatantly contradicts" that version, a standard that courts describe as "very difficult ... to satisfy," requiring that the plaintiff's account be "utterly discredited" by the recording. *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024); accord *Scott v. Harris*, 550 U.S. 372, 380 (2007). A curated set of clips with unexplained gaps cannot meet that standard almost by definition: the very seconds Defendants chose not to quote are the seconds that would show whether Plaintiff's movements were resistance, or an injured, frightened, handcuffed man reacting involuntarily to having his arms wrenched behind his back, exactly the dispute the First Amended Complaint alleges. (FAC ¶¶ 55, 60-61, 75-78.) Gaps in a defendant's own highlight reel are not evidence of what happened during the gaps. They are the absence of evidence, and on a motion to dismiss, the absence of evidence resolves in Plaintiff's favor, not Defendants'.

To the extent the Court is nonetheless inclined to weigh what these clips show against Plaintiff's allegations, that is precisely the exercise Rule 12(d) forbids without converting the motion. If matters outside the pleadings are presented to and not excluded by the Court, "the motion must be treated as one for summary judgment under Rule 56," and all parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Defendants cannot have it both ways, asking the Court to weigh their curated video narrative as though this were a summary judgment record while denying Plaintiff the discovery, ensuring that complete recordings are

7

disclosed, and the procedural protections a summary judgment motion requires. If Defendants want this case decided on the video, the answer is not a Rule 12(b)(6) motion built on twenty cherry-picked clips. It is a Rule 56 motion built on the complete record, after discovery, with Plaintiff given a fair opportunity to respond. Defendants ask this Court to rely on partial, defendant-selected footage at the pleading stage, before any discovery and without even the procedural safeguards Rule 56 would require. The Court should decline.

For these reasons, the Court should either disregard Defendants' video citations entirely under *Khoja*, *Coto Settlement*, and *Cordova*, or, if it wishes to consider what the footage shows, convert this Motion to one for summary judgment under Rule 12(d) and afford Plaintiff a reasonable opportunity to submit the complete, unedited recordings and other pertinent evidence before any ruling.

## IV. ARGUMENT

### A. Plaintiff's 4th Amendment Excessive Force Claim Is Well-Pled. (Count I)

An excessive-force claim is analyzed under the Fourth Amendment's objective-reasonableness standard, balancing "the nature and quality of the intrusion" against the government's countervailing interests, considering (1) the severity of the crime, (2) whether the suspect posed an immediate threat, and (3) whether the suspect was actively resisting or evading arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The First Amended Complaint alleges, in detail, that Plaintiff raised his hands, told Officer Santana he had a firearm, and showed, without touching it, where it was located, all while cooperative; that he was nonetheless held at gunpoint throughout the encounter; that he did not resist when officers took him to the ground; and that officers tackled him, slammed his head into the pavement, put their knees on his back, and pushed his face into the concrete hard enough to chip his tooth. (FAC ¶¶ 54-61, 66-77.) Defendants concede, "for the purpose of their Motion to Dismiss," that "the severity of the crime at the time Defendant Officers arrived on scene was minor." (Mot. at 8.) That leaves, at most, disputed questions about whether Plaintiff posed an immediate threat and whether he was actively

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

8

resisting. Defendants attempt to answer these questions entirely by their own narration of body-worn camera footage rather than by anything pled in the First Amended Complaint. As explained in Section III.B above, that dispute is not resolvable on a motion to dismiss. Taking the First Amended Complaint's well-pled allegations as true, as the Court must, Plaintiff has stated a plausible Fourth Amendment excessive-force claim: a compliant, non-threatening person who has disclosed the location of a firearm without reaching for it does not, under clearly established Ninth Circuit law, justify a multi-officer takedown at gunpoint that fractures his tooth.

## **B. Qualified Immunity Cannot Be Resolved on the Pleadings. (Count I)**

Dismissal on qualified-immunity grounds is appropriate at the pleading stage only when the complaint's own well-pled facts establish immunity on their face. *See White v. Pauly*, 580 U.S. 73, 78-79 (2017). Defendants' qualified-immunity argument again depends entirely on their characterization of body-worn camera footage rather than on the First Amended Complaint's own allegations, which is reason enough to deny it at this stage.

It is also wrong on the merits as pled. Taking as true the First Amended Complaint's allegations that Plaintiff was compliant and non-resisting, had his hands raised, and had disclosed but never reached for his firearm, it was clearly established well before March 2024 that using significant force, including a multi-officer takedown, against a non-resisting, non-threatening person violates the Fourth Amendment. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (officers were not entitled to qualified immunity for "gang-tackling," without first attempting less violent means, a suspect who was "not actively resisting arrest"); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059-60 (9th Cir. 2003) (kneeling on the back and neck of a compliant, non-resisting person and pressing body weight against him "violates clearly established law"). Defendants' cited authorities are distinguishable because, unlike here, they involved suspects who were undisputedly resisting or who had refused to comply with lawful requests before any force was used. *See, e.g., Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921-22 (9th Cir.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9

2001). Whether Plaintiff's case more closely resembles Blankenhorn and Drummond or Defendants' cited cases cannot be decided on the pleadings; it depends on the disputed facts recounted above.

### C. Plaintiff Adequately Pleads Monell Liability. (Counts II & III)

A municipality is liable under 42 U.S.C. § 1983 where a plaintiff shows "(1) that [he] possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to [his] constitutional right; and[ ] (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). At the pleading stage, a Monell claim must contain "sufficient allegations of underlying facts" to give the defendant fair notice and to plausibly suggest an entitlement to relief; it may not simply recite the elements. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012).

Defendants argue the First Amended Complaint offers only conclusions. It does not. Unlike a complaint that merely alleges "the City has a policy of excessive force," the First Amended Complaint pleads, within its own four corners, the specific findings of a contemporaneous, 126-page U.S. Department of Justice pattern-or-practice investigation of the Phoenix Police Department, including that the Department "uses unconstitutional deadly force," trains officers "to use serious force to respond to hypothetical, not actual, danger," has taught officers that "all force ... is de-escalation," and "has one of the highest rates of fatal shootings in the country." (FAC ¶¶ 19-31.) The First Amended Complaint does not stop there: it draws express, particularized parallels between the specific patterns the Department of Justice identified and what happened to Plaintiff, namely officers using force as a first resort against someone who presented no immediate threat, and a chain of command that has failed to meaningfully discipline or retrain officers despite this documented pattern. (FAC ¶¶ 34-38, 122-142.) Chief Sullivan himself is quoted in the very report Plaintiff cites acknowledging, before Plaintiff's arrest, that the Department needed "to do something different." (FAC ¶ 23.)

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

10

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Courts have found this exact combination, a government pattern-or-practice report paired with incident-specific factual allegations, sufficient at the Rule 12(b)(6) stage. *See Dixon v. Cnty. of Cook*, 819 F.3d 343, 348-49 (7th Cir. 2016) ("Government reports can buttress a Monell claim."); *Arrington v. City of Chicago*, No. 17 C 5345, 2018 WL 620036, at *4-5 (N.D. Ill. Jan. 30, 2018) (DOJ pattern-or-practice report on the Chicago Police Department, combined with incident-specific allegations, supported Monell custom-and-practice and failure-to-train theories at the pleading stage)[4]. Courts that have declined to credit a DOJ report at the pleading stage have done so where the report was raised only in briefing rather than pled in the complaint itself, or where the complaint contained no facts tying the report's findings to the plaintiff's own encounter. *See Taylor v. City of Chicago*, No. 21-cv-2197, 2021 WL 4592825, at *4-6 (N.D. Ill. Oct. 4, 2021)[5]. Plaintiff has done exactly what *Taylor* found lacking: the Report is pled directly in the First Amended Complaint and is repeatedly, expressly connected to Plaintiff's own encounter. Defendants' Monell arguments should be denied.

### D. Plaintiff Adequately Pleads Malicious Prosecution, and Defendants' Own Cited Authority Confirms It. (Count IV)

A Fourth Amendment malicious-prosecution claim requires that (i) the proceeding was instituted without probable cause, (ii) the defendant acted with malice, and (iii) the proceeding terminated in the plaintiff's favor. *Thompson v. Clark*, 596 U.S. 36, 49 (2022). The First Amended Complaint alleges all three: the criminal charges against Plaintiff were dismissed in their entirety (FAC ¶ 155); Defendants knew Plaintiff's keys did not open the vehicle involved in the hit-and-run, never interviewed its actual owner, and omitted these facts from their reports even as they pressed forward with charges (FAC ¶¶ 90-104, 151-154); and Plaintiff was not resisting arrest, contrary to the reports Defendants submitted to the prosecutor (FAC ¶¶ 76-84, 112-114).

---

[4] Attached hereto as Exhibit I for the Court's convenience.
[5] Attached hereto as Exhibit J for the Court's convenience.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Defendants' own authority undercuts, rather than supports, dismissal. Defendants cite *Chiaverini v. City of Napoleon, Ohio,* 602 U.S. 556 (2024), for the proposition that courts evaluate malicious-prosecution claims "charge by charge." (Mot. at 15-16.) That is correct as far as it goes. But *Chiaverini's* actual holding cuts against Defendants: "[t]he presence of probable cause for one charge in a criminal proceeding does not categorically defeat a Fourth Amendment malicious-prosecution claim relating to another, baseless charge." *Chiaverini*, 602 U.S. at 558. Even accepting, solely for argument's sake, that probable cause existed for the hit-and-run charge, the First Amended Complaint plausibly alleges that the resisting-arrest charge was baseless: Plaintiff alleges he did not resist, that video evidence confirms this, and that the written police reports asserting otherwise are false. (FAC ¶¶ 76-84.) Under *Chiaverini's* own charge-by-charge framework, that is independently sufficient to state a malicious-prosecution claim as to the resisting-arrest charge, regardless of the hit-and-run charge.

Nor does the presumption that an independent prosecutorial charging decision breaks the causal chain shield Defendants here. That presumption is rebutted where an officer "knowingly withheld material information" from, or misrepresented the facts to, the prosecutor. *Newman v. Cnty. of Orange*, 457 F.3d 991, 993 (9th Cir. 2006); *Smiddy v. Varney*, 665 F.2d 261, 266-67 (9th Cir. 1981). The First Amended Complaint alleges exactly that: Defendants knew of exculpatory facts, including that Plaintiff's keys did not operate the suspect vehicle and that the victim's initial description did not match Plaintiff's clothing, and never disclosed them, while their reports affirmatively misstated that Plaintiff resisted arrest. (FAC ¶¶ 78, 90-104, 151-154.) That is sufficient to plead around Defendants' presumption at this stage.

**E. Plaintiff's Duty-to-Intervene Claim Survives Because the Underlying Constitutional Violation Is Adequately Pled. (Count V)**

Defendants' only argument for dismissing Count V is that there is no underlying constitutional violation to intervene in. (Mot. at 17 (*citing Peck v. Montoya*, 51 F.4th 877 (9th Cir. 2022), for the proposition that integral-participant/duty-to-intervene liability

12

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

requires an underlying constitutional violation).) Because Plaintiff has adequately pled an underlying Fourth Amendment excessive-force violation, see Section IV.A above, that is the end of the inquiry Defendants themselves frame. The First Amended Complaint alleges each officer had a realistic opportunity, over the course of a multi-minute encounter, to intervene to stop the use of unreasonable force and failed to do so. (FAC ¶¶ 159-164.) Count V survives for the same reason Count I does.

### F. Video Evidence Shows What Plaintiff Pled.

The video evidence shows what Plaintiff Pled in his FAC. The fact that Defendants interpret certain cherry-picked portions of the body worn camera footage is in and of itself and issue of fact squarely meant for a Motion for Summary Judgment. Defendants' motion not only raised factual disputes but now requires Plaintiff to respond with specific timestamps on specific videos. Concurrently with this Responses, Plaintiff is also filing its own motion to lodge non-electronic exhibits A-G with the Court.

As discussed herein, Defendants' Exhibit A is 3:36 long; Exhibit B is 5 seconds long; Exhibit C is 51 seconds long; Exhibit D is 8 seconds long; and Exhibit E is 3:51 long. Exhibits B and E come from the exact same source video. Plaintiff's video exhibits include Exhibit A, Officer Santana's body worn camera footage; Exhibit B (which covers both Defendants' Exhibit B and E), Officer Samaniego's body worn camera footage; Exhibit C, another of Santana's body worn camera footage; and Exhibit D, Officer Johnson's body worn camera footage. The corresponding length of videos in Plaintiff's possession show Exhibit A is 8:14 long; Exhibit B is 8:00 long; Exhibit C is 7:47 long, and Exhibit D is 9:38 long. Plaintiff is also providing two additional video exhibits, Exhibit E, another Officer Santana body worn camera footage; Exhibit F, another of Officer Samaniego's body worn camera footage; and Exhibit G is a body worn camera video footage of an unknown at this point officer.

Plaintiff has put together a timeline of Exhibits A, B, C, E, F, and G, and attaches it hereto as Exhibit K. This timeline and corresponding video show that Defendants' "evidence" they claim refutes Plaintiff's allegations are actually full of subjective

interpretations and argumentative and conclusory language involving what can be seen on the actual video. Plaintiff has taken screenshots of key points of the videos and added those to the timeline as well. Unfortunately, because of Defendants' MTD using cherry-picked extrinsic evidence, the only way to respond to the MTD is by bringing in even more extrinsic evidence. For instance, the following table shows Defendants' interpretation along with what Plaintiff believes actually happened:

| Defendants Exhibit / Source | Timestamp | What Defendants say it shows / quote | What Plaintiff says it shows / quote |
|---|---|---|---|
| Ex. A, Santana BWC | 19:54:05–19:54:13 | Plaintiff walked away from Santana, saying "I'm just walking, bro." | Plaintiff backed up from Santana but immediately put his hands in the air. He says he is just walking bro. |
| Ex. A | 19:54:14–19:54:17 | Plaintiff put hands up, told Santana he had a gun on him | Plaintiff tells Santana he has gun on him with his hands up. |
| Ex. A | 19:54:18–19:54:20 | Santana ordered hands on head, face away | No dispute. |
| Ex. A | 19:54:21–19:54:52 | Plaintiff "argued" with Santana for 21 seconds; Santana repeated the hands-on-head command 11 times | Gun pointed at Plaintiff, Plaintiff doesn't understand why he is having this occur, tells Santana he wasn't doing nothing; Plaintiff tells Santana he has a gun and nods to his pocket while his hands are in the air. Santana tells him to put the gun on his head; Plaintiff was incredulous. The entire time, Plaintiff's hands were in the air; Santana gives conflicting instructions about whether Plaintiff should put his hands on his head or up in the air. |
| Ex. A | 19:54:18–19:54:52 | Plaintiff eventually complied | At 19:54:51 Plaintiff puts his hands on his head. |
| Ex. A | 19:54:52–19:55:33 | Santana gave more commands; Plaintiff didn't | Plaintiff questions Santana on why he is pointing a gun at Plaintiff and repeatedly tells Santana he wasn't |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

14

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

| Defendants Exhibit / Source | Timestamp | What Defendants say it shows / quote | What Plaintiff says it shows / quote |
|---|---|---|---|
| | | comply, argued instead; told to kneel 5+ times over 40 seconds | "doing nothing". Plaintiff asks Santana to stop pointing a gun at him. Santana tells Plaintiff that he was going to be safe at 19:54:14. At the same time, Samaniego walks up towards Plaintiff with his gun drawn as well. Plaintiff shows officers that his hands are interlocked on his head. When Plaintiff gets on his knees, Santana says "that's all I wanted from you" |
| Ex. A | 19:55:34–19:54:36 | Santana told Plaintiff to get on his stomach | With Plaintiff on his knees with his hands on his head, Santana tells him to get on his stomach. |
| Ex. A | 19:55:36 | Plaintiff "continued to argue" | Plaintiff says "what dude I didn't do shit" |
| Ex. A | 19:55:36–19:56:39 | Plaintiff failed to obey commands "for over one full minute"; argued with Santana, Samaniego, and Rodriguez | Santana screams "GET ON YOUR STOMACH, I'M DONE PLAYING WITH YOU". Plaintiff asks Santana "How am I going to get on my stomach you want my hands on my head?" Santana tells him to "slowly put your hands out – in a – in a four point position". Plaintiff says "You're going to fucking shoot me right now" Santana responds "if you don't go for your gun you're not gonna get shot". Plaintiff clearly stressed and nervous lets out a deep breath. Santana repeats "If you don't go for your gun you're not gonna get shot." Santana tells Plaintiff "put your hands on your – put your hands on the floor." Plaintiff says "all right all right" and lets out another deep breath. At the same time, the unknown officer is talking to Plaintiff. Plaintiff asks that officer to take Plaintiff's gun and shows that officer his hands are interlocked on his head and he is on his knees. Three |

15

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

| Defendants Exhibit / Source | Timestamp | What Defendants say it shows / quote | What Plaintiff says it shows / quote |
|---|---|---|---|
| | | | officers are pointing guns at Plaintiff at this time. Santana tells Plaintiff to put his hands on the floor. Plaintiff again says he isn't "doing nothing". Unknown officer radios dispatch and says "he is semi-compliant". Plaintiff asks why the officers "are getting scared". Santana says "I want you to be proned out on your stomach". Plaintiff asks "How am I going to get down if I fucking move my hands you're going to shoot me." Santana says "put your hands slowly in front of you". At this time Samaniego turns his back on Plaintiff and walks to the rear of his vehicle in Plaintiff's line of sight. Plaintiff tells officers "dude that scares the shit out of me". Santana tells Plaintiff "you're not going to get hurt if you don't reach for that". Plaintiff never reaches for his gun. Plaintiff goes prone. |
| Ex. A | 19:56:41–19:57:25 | Plaintiff finally complied, lay down, was handcuffed — MTD claims footage "clearly shows he continued to resist during this detention" | Officer Samaniego retrieves a Pepper Ball Rifle. Officers bull rush Plaintiff. Officers put their full weight on Plaintiff's back and head. Officers forcefully push Plaintiff's head into the concrete while putting a knee into Plaintiff's back. Plaintiff says "dude what the fuck I told you I had a fucking gun". Screenshots in Exhibit K show these actions. Screenshots taken second by second show that Plaintiff did not resist, and, in fact, that officers are able to easily move his left arm back, and try to move his right arm straight back causing pain to Plaintiff's right shoulder. It takes officers exactly 11 seconds to bring both arms back and |

| Defendants Exhibit / Source | Timestamp | What Defendants say it shows / quote | What Plaintiff says it shows / quote |
|---|---|---|---|
| | | | handcuff Plaintiff. While handcuffing Plaintiff a taser can be heard initializing. |
| Ex. A | 19:56:47–19:56:56 | Officers moved his right arm behind his back; Plaintiff "tensed his arm and pulled it away... at least twice" | This is false. As the screenshots and video show, Plaintiff did not pull his arm away twice. At most Plaintiff looking at Samaniego caused an involuntary movement. Samaniego finds no resistance or struggle when grabbing Plaintiff's arm. |
| Ex. B, Samaniego BWC | 19:56:55–19:56:58 | Plaintiff "bent his left arm and attempted to pull it underneath his torso" | This is absolutely false. The video shows that Plaintiffs arm was not moving underneath his torso or bending in any direction. |
| Ex. A | 19:56:53–19:56:56 | Plaintiff "lifting his head toward the officers, flailing his body, and arguing" | Again, this is absolutely false. The video categorically shows that Plaintiff did not even move his body other than to accommodate the officers handcuffing. |
| Ex. C, Santana's 2nd BWC | 20:04:32–20:05:23 | Plaintiff "uncooperative" with Fire Dept. exam | Plaintiff upset keeps saying I want a lawyer. |
| Ex. C | 20:04:49–20:04:54 | Plaintiff told EMT police chipped his tooth; EMT said he didn't see a chip | No dispute to what was said. |
| Ex. C | 20:04:57–20:05:23 | Plaintiff refused Fire Dept. treatment | Plaintiff upset keeps affirming he wants a lawyer and asks EMT to take photos of his mouth. |
| Ex. D, Officer Johnson BWC | 20:07:20–20:07:26 | Show-up ID procedure; victim | This video is 8 seconds long. No Context is given. That portion of the video. Officer asks Complainant |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

17

| Defendants Exhibit / Source | Timestamp | What Defendants say it shows / quote | What Plaintiff says it shows / quote |
|---|---|---|---|
|  |  | positively identified Plaintiff | "where do you recognize him from?" and Complainant says "with the crash". Officer Johnson repeats "with the crash? Cool". |

The foregoing shows that there are factual disputes regarding what is seen and heard, and even more concerning, omissions by Defendants. What Defendants also conveniently leave out from their video citations is the fact that the description given initially by the Complainant does **not** match Plaintiff's appearance. The Complainant tells Samaniego at 19:53:18 "I think like a white shirt, I'm not sure" when Samaniego asks "What does he look like, what was he wearing?" Ex. B. Complainant then tells Samaniego that the suspect said "don't call the cops, it's my mom's truck, it's my mom's truck." *Id* at 19:53:28. Samaniego inexplicably says "So you said black shirt?" and then asks if the suspect had "any hoodie?" to which Complainant says "No". *Id* at 19:53:40-41. Plaintiff in fact was **not** wearing a white shirt and **was** wearing a hoodie. *See generally Exhibits A-D.* Defendants also conveniently left out the fact that Officer Johnson asks Complainant if he got "a good look at the guy" Ex. D at 01:05[6]. Complainant responds "Not really". *Id* at 1:07. Officer Johnson asks Complainant "do you think you'd be able to identify him, maybe?". *Id* at 1:08. Complainant responds "Yeah". *Id* at 1:10. Officer Johnson tells Complainant that "We're going to drive over to the guy we have in custody, see if you can identify him." *Id* at 1:30. He then tells Complainant "Okay man – they're going to pull somebody out eventually, once the fire gets out of here or something, just tell me if you recognize them, yes or no. If you do, where from." *Id.* at 2:34-2:42. He then tells Complainant "But if you do recognize him, just tell me from where and how you recognize him. Keep in mind, stuff can change – clothing. Stuff can change". *Id.* at 2:53. At the time

---

[6] Much of Officer Johnson's bodycam information and timestamps are redacted in his video, so Plaintiff provides the minute and second of the actual video file for each reference.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

of Complainant's "identification", Complainant was in the back of Officer Johnson's patrol vehicle with the windows up looking between bars during the night after being told by Officer Johnson that they had a suspect in custody and that clothes can change. And, in fact, Plaintiff was ***not*** involved in any way with the hit and run.

What Defendants' further leave out is that Officers Santana and Samaniego took Plaintiff's keys to the truck that caused the hit and run after Plaintiff was arrested. They actually tested Plaintiff's keys on both the door lock and the ignition. Ex. G, 20:26:57; Ex F. 20:27:02, 20:29:08. Plaintiff's keys did not work on either.

## V. PLAINTIFF DOES NOT OPPOSE DISMISSAL OF THE FOLLOWING CLAIMS.

### A. Counts VI Through IX, Plaintiff's Arizona State-Law Claims

Plaintiff does not oppose dismissal of Counts VI (Negligence and Gross Negligence), VII (Intentional Infliction of Emotional Distress), VIII (Battery), and IX (Negligent Hiring, Supervision, Retention, and/or Training), to the extent those claims arise under Arizona law. As Defendants correctly note, a notice of claim under A.R.S. § 12-821.01(A) was required within one hundred eighty days of accrual, on or about September 25, 2024, and Plaintiff's notice of claim was not served until October 2025. Plaintiff's state-law claims are, in addition, subject to the one-year limitations period of A.R.S. § 12-821, which expired March 29, 2025, before this action was filed on February 3, 2026. *See Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 295 ¶ 6 (2007); *Canyon del Rio Investors, L.L.C. v. City of Flagstaff*, 227 Ariz. 336, 340 (App. 2011). In the interest of narrowing the issues for the Court, Plaintiff does not contest dismissal of Counts VI through IX.

That concession does not extend to Counts I through V. Neither A.R.S. § 12-821 nor § 12-821.01 governs Plaintiff's claims under 42 U.S.C. § 1983. A state notice-of-claim requirement is preempted as applied to § 1983 claims under the Supremacy Clause. *Felder v. Casey*, 487 U.S. 131, 138, 153 (1988). And Arizona's one-year public-entity limitations period does not apply to § 1983 actions; instead, the applicable period is the State's two-

year residual personal-injury limitations period. *Madden-Tyler v. Maricopa Cnty.*, 189 Ariz. 462, 466, 943 P.2d 822, 826 (App. 1997) (holding "the most appropriate statute of limitations for [§ 1983] actions is [A.R.S. §] 12-542, setting a two-year limit for personal injury actions"); see also A.R.S. § 12-542. Plaintiff's § 1983 claims accrued March 29, 2024, and this action was filed February 3, 2026, within the applicable two-year period. Defendants' notice-of-claim and one-year limitations arguments accordingly have no application to Counts I through V.

### B. The Official-Capacity Claims Against Defendant Sullivan Are Redundant of the Claims Against the City.

Defendant Sullivan has not joined this Motion, and Plaintiff is not aware of any indication in the record that he has yet appeared or been served in this action following removal. Plaintiff nonetheless addresses this issue now, in the interest of efficient case management and to avoid unnecessary future motion practice.

Plaintiff sued Defendant Sullivan "in his official and individual capacity." (FAC ¶ 8.) Because Defendant City of Phoenix is separately and directly named as a defendant, the official-capacity claims against Chief Sullivan add nothing to the case: "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Ninth Circuit routinely dismisses official-capacity claims against an individual official as "redundant" where, as here, the governmental entity is also a named defendant. *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (affirming dismissal of a county sheriff sued in his official capacity as a "redundant defendant" where the county was also named). Plaintiff does not oppose dismissal of the official-capacity claims against Defendant Sullivan on that basis. This concession does not affect Plaintiff's Monell claims against Defendant City of Phoenix, nor Plaintiff's claims against Defendant Sullivan in his individual capacity, both of which remain pending for the reasons set forth in Section IV.C above.

### VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss as to Counts I through V. As set forth in Section V, Plaintiff does not oppose dismissal of Counts VI through IX or of the official-capacity claims against Defendant Sullivan.

**RESPECTFULLY SUBMITTED** this 24th day of July 2026.

**MILLS + WOODS LAW, PLLC**

By   */s/ Sean A. Woods*
        Robert T. Mills
        Sean A. Woods
        5055 North 12th Street, Suite 101
        Phoenix, AZ 85014
        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Benjamin J. Barr
benjamin.barr@phoenix.gov
tanika.sherman@phoenix.gov
Vanessa M. Tucker
vanessa.tucker@phoenix.gov
maria.sandoval@phoenix.gov
**OFFICE OF THE CITY ATTORNEY**
**JULIE M. KRIEGH**
law.civil.minute.entries@phoenix.gov
 200 W Washington, Ste. 1300
Phoenix, AZ 85003-1611
(602) 262-6761
*Attorneys for Defendants City of Phoenix, Officer Ortiz Samaniego and Officer Santana*

        */s/ Ben Dangerfield*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

21