## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHAEL TAYLOR,

   Plaintiff,

  v.

CITY OF CHICAGO, et al.,

   Defendants.

No. 21 CV 2197

Judge Manish S. Shah

### MEMORANDUM OPINION AND ORDER

Michael Taylor was driving on the South Side of Chicago when he was pulled over and handcuffed by four Chicago Police Department officers. After searching him, his car, and his two passengers, the officers told him he was free to go. As he walked away, one of the officers told Taylor there was an outstanding warrant for his arrest and grabbed him. The four officers tackled him to the ground, and Taylor fractured his leg. Taylor now brings (1) a § 1983 claim against the officers in their individual capacities for violation of his Fourth and Fourteenth Amendment rights, (2) a § 1983 *Monell* claim against the City of Chicago, and (3) a state-law claim under 745 ILCS 10/9-102 directing the City to indemnify any officers found liable under Count I. The City of Chicago now moves to dismiss the *Monell* claim under Federal Rule of Civil Procedure 12(b)(6). The motion is granted.

## I.    Legal Standard

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At this stage, I accept all factual allegations as true and draw all reasonable inferences in Taylor's favor, disregarding legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

## II.    Facts

Four Chicago Police Officers pulled over Michael Taylor and his two passengers. [1] ¶ 7, 9.* The officers told them to get out of the car, took Taylor's ID, handcuffed him to one of the other passengers, and had him stand up against a police car. *Id.* ¶¶ 9–10. Taylor says that the officers then told him that he could go if they didn't find any weapons in the car. *Id.* ¶ 11. They searched the car, Taylor, and the two passengers, and ran a check for outstanding warrants. *Id.* ¶ 12. They didn't find any weapons, so they uncuffed him and returned his ID. *Id.* ¶¶ 13–14.

Taylor started walking away, thinking he was free to go. *Id.* ¶ 14. But as he did, one of the officers told him there was an outstanding warrant for his arrest. *Id.*

---

* Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the complaint, [1].

¶ 15. The officer tried to seize Taylor, Taylor pulled away, and the officers tackled him to the ground. *Id.* ¶¶ 15–16.

On the ground, the officers repeatedly told Taylor to stop resisting. *Id.* ¶ 17. But Taylor was not resisting, and he told the officers this. *Id.* ¶ 17. The officers continued to put pressure on his leg and fractured his left femur as a result. *Id.* ¶¶ 17–18.

Taylor brought suit in this court under 42 U.S.C. § 1983. He sued the officers in their individual capacities for violations of his Fourth and Fourteenth Amendment rights and sued the City of Chicago under a theory of *Monell* liability. *Id.* ¶¶ 19–26. Specifically, he alleges that the City failed to properly train, discipline, and hire officers, and failed to properly track officer misconduct. *Id.* ¶ 25.

## III. Analysis

Municipalities can be sued directly under § 1983 for monetary, declaratory, or injunctive relief. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But a municipality can be liable only if the alleged constitutional violation was caused by one of three things: (1) an official policy adopted by the municipality, (2) a custom or practice that is not written or official, but is so widespread and well settled that it has become a de facto policy, or (3) an official with final policymaking authority. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Taylor's allegation falls into the second bucket, a custom-or-practice claim.

To prevail on such a claim, a plaintiff has to show that (1) there actually is a custom or practice of unconstitutional violations, (2) the custom or practice is the

3

result of deliberate indifference on the part of policymakers, and (3) the custom or practice caused the alleged harm. *See Calderone v. City of Chi.*, 979 F.3d 1156, 1163 (7th Cir. 2020). Of course, at the motion-to-dismiss stage, Taylor does not need to establish these facts. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993). But he must at least plead them and do so in more than boilerplate language. *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

### A.    Existence of a Custom or Practice

As a preliminary issue, an order on a motion to dismiss is generally based on the allegations in the complaint itself. It is true that a plaintiff "need not put all of the essential facts in the complaint," and "may add them by affidavit or brief in order to defeat a motion to dismiss." *Help at Home Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752–53 (7th Cir. 2001). But a plaintiff cannot use his response brief to amend his complaint. *Bissessur v. Ind. Uni. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

Here, to meet his pleading burden, Taylor relies on the 2017 U.S. Department of Justice Report on the Chicago Police Department and the Independent Monitoring Report on the consent decree between the State of Illinois and the City of Chicago. [23] at 2–5. He quotes the DOJ Report's finding that the Chicago Police Department "has engaged in a pattern or practice of unreasonable force in violation of the Fourth Amendment and that the deficiencies in CPD's training, supervision, accountability, and other systems have contributed to that pattern or practice." *Id.* at 2 (citing Ex. A

4

at 23). He also notes that the 2019 Independent Monitoring Report found that the City had met the deadline for only three of nineteen requirements related to use of force. *Id.* at 4 (citing Ex. C at 57).

Government reports can buttress a *Monell* claim. *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348–49 (7th Cir. 2016). Taylor's problem is that these reports appear nowhere in his actual complaint; they come up for the first time in his response. [23] at 2–5.

Taylor acknowledges this omission, but argues that I can still rely on these sources, either by incorporating them into the complaint or taking judicial notice of them. [23] at 7. He points to *Arrington v. City of* Chicago, 2018 WL 620036 (N.D. Ill. Jan. 30, 2018), to show that at least one court in this district has taken the DOJ Report into consideration on a motion to dismiss, even when the plaintiff didn't cite it in her complaint. [23] at 7. But the *Arrington* plaintiff's complaint was significantly more detailed than Taylor's here. For instance, Arrington cited six excessive force verdicts and settlements, alleged that three of those incidents were not properly investigated or documented by the City, and alleged that an investigator with the City's Independent Police Review Authority was fired because he refused to state in reports that certain shootings were justified. *Arrington*, 2018 WL 620036, at *1–2. The DOJ Report helped the *Arrington* plaintiff survive a motion to dismiss by supplementing existing allegations. But Taylor offers no such allegations.

What's more, the passage of time since the DOJ report diminishes its usefulness as an allegation of the practices in place at the time of Taylor's seizure.

5

Without anything in the complaint to suggest that the practices found by DOJ investigators were still in place two years later, the report is a non sequitur. And the Independent Monitoring Report can't fill the gap either. At most, it suggests that the police department had not implemented every reform; that adds nothing to Taylor's existing allegations. As in *Carmona v. City of Chicago*, simply attaching the DOJ Report to a response brief doesn't salvage a conclusory complaint. 2018 WL 1468995, at *4 (N.D. Ill. Mar. 26, 2018). Because the DOJ Report and the Independent Monitoring Report do not supplement existing allegations in the complaint, I do not take them into account.

Taylor's allegations about the existence of a custom or practice are limited to a paragraph where he simply states that the City has the following de facto policies, [1] ¶ 25:

- The failure to properly investigate allegations of officer misconduct.
- The failure to have a system which monitors patterns of alleged officer misconduct.
- The failure to properly discipline sustained allegations of officer misconduct.
- The failure to properly maintain records of misconduct and allegations of misconduct, including the use of excessive force.
- The failure to properly hire, train, monitor, and/or supervise officers.
- The failure to properly train officers on proper arrest procedure.

To sufficiently plead the existence of a custom or practice, a plaintiff needs to show that there have been enough similar incidents to establish a pattern of conduct. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). This requirement ensures that a municipality is not held liable for an isolated incident outside of its control—something that would start to look very similar to the *respondeat superior* liability

6

that *Monell* explicitly rejected. *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005); *Monell*, 436 U.S. at 692–93. Thus, a plaintiff bringing a custom-or-practice *Monell* claim cannot survive a motion to dismiss with a complaint based only on his own experience. *See Gill*, 850 F.3d at 344.

But Taylor's claim does exactly that; he doesn't point to any other specific incidents in the past. And his lack of factual specificity extends beyond that. Despite alleging failures to investigate, monitor, discipline, hire, and train, he never explains what the City's actual practices are for investigating, monitoring, disciplining, hiring, and training, or where those practices are lacking. Absent those facts, Taylor cannot demonstrate a custom or practice.

## B. Deliberate Indifference

In addition to establishing a custom or practice of constitutional violations, a plaintiff bringing a *Monell* claim must also meet "rigorous standards of culpability." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 378 (7th Cir. 2020). In contrast to *Monell* claims based on affirmative municipal action, when "inferences of culpability … are easy," culpability can be difficult to establish in *Monell* claims based on inaction. *Id.* at 377–78. That's because a "failure to do something [can] be inadvertent." *Id.* at 378.

To weed out those cases in which a failure to act is inadvertent, a plaintiff must show that a policymaker was deliberately indifferent to the consequences of not acting. *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002). A plaintiff can do that in one of two ways. He can establish that officials knew about a series of prior bad acts but didn't act on that knowledge. *Thomas*, 604 F.3d at 303. Or, absent a series

7

of prior bad acts, he can show that the constitutional violation was a "highly predictable consequence" of either an official policy or an act by someone with policymaking authority. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997); *see Fields v. City of Chi.*, 981 F.3d 534, 562 (7th Cir. 2020); *White v. City of Chi.*, 829 F.3d 837, 843–44 (7th Cir. 2016).

I take *Taylor*'s complaint to be the first kind, given the response brief's focus on the Chicago Police Department's past conduct. *See* [23] at 2–5, 6–8. As was true of establishing a custom or practice, boilerplate allegations aren't enough to establish deliberate indifference. *McCauley*, 671 F.3d at 616–18. So even if Taylor had established a custom or practice, his failure to address deliberate indifference in more than a conclusory fashion would prove fatal to his complaint. Taylor's sole mention of deliberate indifference is one sentence of the complaint: "[t]he aforementioned policies, practices, and customs, individually and collectively, have been maintained and/or implemented with deliberate indifference by the Defendant City of Chicago, and its subsidiary departments." [1] ¶ 26.

Taylor does not allege that city officials knew about the widespread use of excessive force, such that failure to train became a conscious choice to allow constitutional violations to continue.

## C. Causation

A plaintiff suing under *Monell* must also demonstrate that the City's custom or practice caused his constitutional rights to be violated. As is true of culpability, "rigorous standards of … causation" apply in *Monell* cases to ensure that the theory

of liability does not inch too close to *respondeat superior* liability. *J.K.J.*, 960 F.3d at 378.

The municipality's conduct must be the "moving force" behind the alleged injury, *Dixon*, 819 F.3d at 348, but it need not be the sole cause. *Whitlock v. Brueggemann*, 682 F.3d 567, 583 (7th Cir. 2012). Finding causation is not a "mechanical exercise," but instead requires viewing evidence in its totality and using common sense. *J.K.J.*, 960 F.3d at 384–85. In failure-to-train cases, causation can be especially difficult to establish because "the connection between inaction and a resulting injury is more tenuous" than the connection between an affirmative policy and a resulting injury. *Id.* at 378.

Here, Taylor never explains how the City's alleged failure to train, discipline, hire, and fire officers, or investigate misconduct allegations, monitor patterns of alleged misconduct, and maintain records of misconduct, was the "moving force" behind his injury. He simply states that the officer's actions were "done pursuant to" the City's de facto policies, [1] ¶ 24, that those policies were the "moving force" behind the officers' actions, and that they were a "direct and proximate cause" of his injuries. *Id.* ¶ 26. But "conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth." *McCauley*, 671 F.3d at 616. Plaintiffs must give enough factual details "to present a story that holds together"—something that Taylor fails to do. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Because Taylor has not sufficiently pled the existence of a custom or practice, nor shown that the custom or practice was the result of city officials' deliberate

9

indifference and the cause of his injuries, his complaint is dismissed for failure to state a claim. The City asks for dismissal with prejudice. [19] at 3. But because this is Taylor's first complaint and he may be able to cure its deficiencies, the complaint is dismissed without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015).

## IV.    Conclusion

Defendants' motion to dismiss Count II, [18], is granted. Count II is dismissed without prejudice. The parties' discovery progress report remains due on October 13, 2021, and any requests to amend the pleadings must be made by December 15, 2021.

ENTER:

_____
Manish S. Shah
United States District Judge

Date:    October 4, 2021

10