OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

OFFICE OF THE CITY ATTORNEY
JULIE M. KRIEGH, City Attorney State Bar No. 021175
200 West Washington, Suite 1300
Phoenix, Arizona 85003-1611
Telephone (602) 262-6761
law.civil.minute.entries@phoenix.gov

Benjamin J. Barr Bar No. 040376
Assistant City Attorney
Vanessa M. Tucker, State Bar No. 024455
*Attorneys for Defendants City of Phoenix,*
*Adrian Nicolas Ortiz Samaniego and Diego Santana*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Little Joe Lageman, an individual,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, et al.,<br><br>Defendants. | Case No. 2:26-cv-02779-ROS-ASB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>*(Assigned to the Honorable Roslyn O. Silver and the Honorable Alison S. Bachus, U.S. Magistrate Judge)* |

Defendants, City of Phoenix Police Officers Adrian Nicolas Ortiz Samaniego and Diego Santana ("Defendant Officers") and the City of Phoenix ("Defendant City" or "the City") (collectively "Defendants"), through undersigned counsel, file this reply in support of their Motion to Dismiss.

## I. THE COURT MAY CONSIDER BODY-WORN CAMERA FOOTAGE UNDER THE INCORPORATION BY REFERENCE DOCTRINE WITHOUT CONVERSION

Plaintiff relies extensively on the body-worn camera footage of responding officers in formulating his First Amended Complaint (FAC). Repeatedly, throughout the FAC, Plaintiff refers to statements and facts that could only be revealed through watching the body-worn

1

camera footage (Doc. 1-3, ¶¶40, 42, 46, 47, 48, 50-77, 79.) The FAC even quotes parts of the body-worn camera footage in paragraphs 51, 52, and 54.  In paragraph 77, Plaintiff attempts to add support to his claims by stating, "the video shows this." Because Plaintiff's claims are premised on what "the video shows," the footage is integral to the FAC and may be considered to prevent selective quotations and references by Plaintiff.

Courts in this District and this Circuit have considered body-worn camera footage where the complaint necessarily relies on the recordings. *See, Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). "Defendants may incorporate a document if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id*. (quotations omitted). Courts within this Circuit have considered body-camera footage when ruling on a motion to dismiss because the "complaints necessarily relie[d] on the circumstances surrounding" the incident alleged in the complaint. *Lihosit v. Flam*, No. CV-15-01224-PHX-NVW, 2016 WL 2865870, at *3 (D. Ariz. May 17, 2016); see also *Covert v. City of San Diego*, No. 15-CV-2097 AJB (WVG), 2017 WL 1094020, at *5 (S.D. Cal. Mar. 23, 2017); *Raudelunas v. City of Vallejo*, No. 2:21-cv-00394-KJM-JDP, 2022 WL 329200, at *1 (E.D. Cal. Feb. 3, 2022); *Saved Magazine v. Spokane Police Dep't*, 505 F. Supp. 3d 1095, 1103 (E.D. Wash. 2020), aff'd, 19 F.4th 1193 (9th Cir. 2021), cert. denied 142 S. Ct. 2711 (2022).

Plaintiff's argument that Defendants' use of "curated clips" is misplaced. Defendants lodged the relevant portions of the body-worn camera rather than the entirety of the body-worn camera to ensure that Defendants were only addressing the claims in the FAC and not converting the Motion to Dismiss into a summary judgment motion.  While Plaintiff argues that the Court should not consider these "clips," the Plaintiff provides the entirety of the relevant body-worn camera footage to bolster his allegations and does not dispute the

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

authenticity of the body-worn camera.  (Doc. 21, Exhibits A – G).  The relevant question here is whether the FAC necessarily relies on the recordings and whether authenticity is undisputed. Here, the Court may consider the recordings that the FAC references to supply context and prevent selective quotations.  The Court may do so without converting the motion to dismiss.

Additionally, Plaintiff's lawyer-created demonstratives such as the body-worn camera chart (Doc. 19, pages 14-19) and an editorialized timeline with screenshots (Doc. 21, Exhibit K) were prepared for this briefing and are not part of the FAC.   Because these exhibits were not referenced nor attached to the FAC, the Court should not consider these extra-record advocacy exhibits in deciding a Rule 12(b)(6) motion. *See, Free Kick Master LLC v. Apple Inc.,* 140 F. Supp.3d 975 (2015), *citing, Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). These exhibits should be excluded in their entirety.

The Supreme Court's decision in *Scott v. Harris* confirms that a court need not credit a plaintiff's version of events where video evidence blatantly contradicts it. *Scott v. Harris*, 550 U.S. 372, 378-80 (2007). Although Scott arose at summary judgment, courts have extended that principle to the pleading stage: a court need not accept allegations that contradict a properly incorporated exhibit and should view the facts as depicted by the footage. *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, fn. 8 (N.D. Cal. 2020); *Ballew v. City of Pasadena*, 642 F. Supp. 3d 1146, 1163 (C.D. Cal. 2022). Plaintiff's Response does not address these authorities, or the parallel decisions in the Motion: *Lihosit v. Flam*, *Covert v. City of San Diego*, *Raudelunas v. City of Vallejo*, and *Saved Magazine v. Spokane Police Department*, all allowing for the consideration of body-camera footage on a motion to dismiss.

Instead, Plaintiff cites and attaches three cases - two memorandum decisions from the Second Circuit (Doc. 21, Ex. I and J) and one (Doc. 21, Ex H) that is redacted to exclude this Editor's Note: "This document contains discussion of unverified citations, likely generated by AI tools used by a party or counsel. These citations are not attributable to the Court. The

unverified citations have been preserved as part of the official record, but links are unavailable." The Second Circuit cases are not binding on this Court and should not be persuasive considering there are cases directly addressing this issue in the Ninth Circuit. Moreover, Exhibit H should be excluded as it is redacted by Plaintiff and it contains an editor's note about unverified citations. Therefore, it is not reliable authority and should be disregarded.

For these reasons, the Court should consider the body-worn camera recordings that the FAC references and quotes under the incorporation-by-reference doctrine without conversion under Rule 12 (d). Defendants' excerpts were provided to the Court solely to provide relevant context to the FAC's allegations and to prevent selective quotations. Plaintiff's extra-record exhibits and unreliable and/or out of Circuit memorandum opinions should be disregarded.

## II.    THE *GRAHAM* FACTORS COMPEL DISMISSAL OF THE EXCESSIVE FORCE CLAIM

As Defendants argued in their Motion, when evaluating an excessive force claim during an arrest, the Court must apply the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The factors courts should consider when assessing the government interests at stake include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Plaintiff avoids any discussion related to this standard and merely reiterates that the severity of the crime, as stated by Defendants, was minor. However, *Graham* requires this Court to evaluate *all* three factors – not just one.

Plaintiff failed to address the other two factors because he simply cannot dispute that the amount of force used was both minimal and reasonable under the circumstances. First and foremost, Plaintiff continued to walk away from Officer Santana despite being asked to stop. (Doc. 8, Ex. A, 19:54:05–19:54:13.) Once, stopped and after telling police that he had a gun in his waistband, Plaintiff argued with Officer Santana for twenty-one (21) seconds and failed

4

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

to comply after eleven (11) requests to put his hands on his head. (Doc. 8, Ex. A, 19:54:18-19:54:52.) Then, Plaintiff proceeded to continue to disobey commands to get on his knees, five times over the course of forty (40) seconds. (Doc. 8, Ex. A, 19:54:52-19:55:33.)  Plaintiff then refused to get on his stomach – a process that took over a full minute and multiple commands by Officer Santana. (Doc. 8, Ex. A, 19:55:34-19:56:39).  This is over two and a half minutes of arguing and noncompliance.

Once on his stomach, Plaintiff then proceeded to pull one of his arms away from Defendant Officers. He tried to hide his other arm under his body so they could not handcuff him.  Plaintiff continued to struggle with officers by lifting his head and moving the rest of his body.  All while armed with a gun.

Whether the suspect posed an immediate threat to others is the most important factor in the court's analysis. *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir. 2017)). Because Plaintiff refused to comply with Officer Santana's commands, was found walking away from a hit and run scene, walked away from Officer Santana and stated that he had a gun, Plaintiff posed a legitimate and immediate threat to the safety of Defendant Officers as well as the surrounding community, a residential neighborhood. The body-worn camera footage and Plaintiff's own allegations demonstrate his continuous failure to comply while armed.  Under *Graham*, these facts fail to allege an excessive force claim and warrant dismissal.

## III.   PROBABLE CAUSE DEFEATS THE FALSE ARREST AND MALICIOUS PROSECUTION CLAIMS

Plaintiff fails to address the facts that support probable cause for the hit and run thereby waiving these claims. *See*, *Ford v. Hyundai Motor America*, 709 F.Supp.3d 1067 (2025) ("A party's failure to address an argument challenging the validity of a claim may be deemed waiver or abandonment of that claim.").  As stated by Defendants in their Motion, the victim's vehicle

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

was parked on a public roadway and was struck. The victim saw a Hispanic male wearing a dark shirt flee from the scene. Plaintiff was wearing a dark shirt and was walking in the vicinity of the hit and run. Later, the victim positively identified Plaintiff as the person who struck his vehicle.

"Probable cause to arrest exists when [under the totality of circumstances,] officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been ... committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause is measured by an objective standard based on the information known to the arresting officer. *Id.* "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause does not require certainty, it requires a fair probability under the totality of the circumstances, which is what the officers had here. Plaintiff focuses on a set of keys found on the Plaintiff – one fact, as opposed to the totality of the circumstances that point to the Plaintiff as having committed the hit and run.

Independent probable cause existed for resisting arrest. After prolonged noncompliance - walking away from the officers; disobeying multiple commands over a two-minute interaction; and physical resistance during handcuffing including: tensing his arms; pulling his hands and arms away from officers; and attempting to conceal his arms, officers had probable cause to arrest Plaintiff for resisting arrest. These facts defeat Plaintiff's illegal arrest or malicious prosecution claim.

Importantly, Plaintiff failed to plead any facts that demonstrate that the officers knowingly misled the prosecutor or suppressed exculpatory evidence so as to overcome the presumption of independent prosecutorial judgment. Without any facts to support his

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

conclusory statements, the malicious prosecution claim fails. *See, Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006).  Additionally, probable cause is a complete defense to malicious prosecution. *Evans v. County of Los Angeles,* 529 F.Supp.3d 1082 (2021); *See also, Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054-55 (9th Cir. 2009).

## IV.    QUALIFIED IMMUNITY APPLIES TO THE AMOUNT OF FORCE USED IN THIS CASE

Plaintiff's response cites two cases that are distinguishable from the facts of this case. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) and *Drummond ex rel. Drummond v. City of Anaheim,* 343 F.3d 1059-60 (9th Cir. 2003) both address situations wherein police used significant force against suspects who were not actively resisting. Specifically, in *Blankenhorn,* the suspect was yelling and police tackled and punched him.  In *Drummond*, police continued the use of body-weight compression when the suspect was already handcuffed and compliant.  Those facts are drastically different than here.

Here, by contrast, from the onset of the encounter, Plaintiff failed to obey commands and yelled at the officers. Then after over two minutes of Plaintiff not complying with commands while armed, Plaintiff actively resisted by tensing his right arm and pulling it away from officers, by trying to hide his left arm under his body, and moving his head and body around. Officer Santana was able to handcuff Plaintiff's right arm while Officer Rodriguez applied pressure to Plaintiff's body to maintain control and ensure Plaintiff was handcuffed. Once Plaintiff was handcuffed, the pressure ceased and he was escorted to the patrol vehicle without incident.

Qualified immunity depends on whether existing case law made it unmistakably clear that the officers' actions were unlawful in the specific situation they faced, not based on broad or general principles.  It is Plaintiff's burden to show that the right was clearly established at the time of the alleged misconduct, not Defendants'.  *See, Romero v. Kitsap County,* 931 F.2d

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

624 (1991). Plaintiff has failed to meet his burden.  Instead, the cases previously cited in Defendants' Motion address similar conduct as the situation here and support a grant of qualified immunity.

In *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010), the pinning of arrestee to the floor and handcuffing her was a reasonable amount of force.  In *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921–22 (9th Cir. 2001), twisting plaintiff's left arm behind her with enough force to lift her off the ground and break her watch band while attempting to handcuff her was held to be reasonable where the plaintiff refused to show transit identification upon request, refused to hand over purse when warned that non-compliance would lead to arrest, stiffened her arm and attempted to pull free when the officer grabbed her arm).  In *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994), "pain compliance" arrest technique which caused varying degrees of injury to arrestees including bruises, a pinched nerve, and a broken wrist did not constitute excessive force. It would not have been clear to Defendant Officers that the amount of force they used to take Plaintiff into custody was unlawful based on existing Ninth Circuit case law. Accordingly, they are entitled to qualified immunity and dismissal of the excessive force claims.

## V.   CONCLUSORY ALLEGATIONS ARE INADEQUATE TO SUPPORT A *MONELL* CLAIM

Plaintiff relies primarily on the findings of the U.S. Department of Justice report, which is not an adjudication of liability and is not tied to this incident. Plaintiff pleads no pattern of similar incidents, no facts about the content of use of force training, no facts about notice to policymakers, and no facts related to discipline tied to this type of use of force.

"In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the

plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)).

Plaintiff pleads that Defendant City lacked an official policy, failed to train and supervise Defendant Officers, and had widespread unconstitutional customs – all conclusory statements without more. *See, Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Plaintiff bases his *Monell* claim on the existence of a widespread and permanent practice or a failure to train but failed to provide any facts to support those allegations.  He cannot merely rely on conjectures from a report. Accordingly, Plaintiff has failed to allege facts sufficient to plausibly support the existence of a municipal policy, custom, or deliberate indifference necessary to sustain a Monell claim. Dismissal under Rule 12(b)(6) is therefore warranted.  Even if the Court finds that Plaintiff adequately plead his *Monell* claims, the Court must still dismiss it, as for the reasons argued above, Defendants did not violate Plaintiff's constitutional rights. *See Lockett v. Cnty. of Los Angeles,* 977 F.3d 737, 741 (9th Cir. 2020) (holding that *Monell* requires a plaintiff to show an underlying constitutional violation caused by the peace officer.)

## VI.    THE FAILURE TO INTERVENE CLAIM FAILS

Plaintiff's argument remains circular at best rather than detailing the constitutional violation that supports his failure to intervene claim. Because a failure to intervene theory requires an underlying constitutional violation, Plaintiff's claim fails and should be dismissed. *Peck v. Montoya*, 51 F.4th 877 (9th Cir. 2022).

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

## VII.    COUNTS VI THROUGH IX SHOULD BE DISMISSED WITH PREJUDICE

Plaintiff agrees that Counts VI through IX should be dismissed as Plaintiff concedes that those claims are barred by A.R.S.§ 12-821.01 and A.R.S.§ 12-821.  The only reasons why Defendants briefed these issues was because Plaintiff failed to substantively respond to Defendants' initial meet and confer email from May 21, 2026.  Thereafter, on May 28, 2026, Defendants followed up with Plaintiff by email and telephone call and Plaintiff stated that he would respond by June 3, 2026.  At the end of the day on June 3, 2026, after receiving no contact from the Plaintiff, Defendants followed up again asking Plaintiff to respond by June 5, 2026.  As of June 26, 2026, the date of filing the Motion to Dismiss, Plaintiff had still not responded to Defendants' meet and confer email.  The purpose of meeting and conferring is to not waste the time of the parties or the Court.  That did not happen here.  Nonetheless, these claims must be dismissed *with* prejudice as they are barred by both statutes.

## VII.    ALL CLAIMS AGAINST FORMER AND CURRENT POLICE CHIEF MUST BE DISMISSED WITH PREJUDICE

Defendants agree with Plaintiff that former Police Chief Sullivan has not appeared and there has been no proof provided by Plaintiff that he was served.  Plaintiff's deadline to serve the former Chief was July 21, 2026.  Accordingly, any individual capacity claims related to Chief Sullivan must be dismissed with prejudice.  In addition, all official capacity claims against the current or former Chief of Police should also be dismissed as neither have been served and the current Chief has not been named or served.

## VIII.  CONCLUSION

For the reasons set forth above and in Defendants' Motion to Dismiss, Defendants respectfully request that the Court grant the Motion to Dismiss in full, dismissing Counts I through V with prejudice, dismissing Counts VI through IX with prejudice, as conceded and barred by statute and dismissing any and all claims against former Chief Sullivan.  Dismissal

OFFICE OF THE CITY ATTORNEY
200 W. Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

with prejudice is appropriate as the incorporated video record and FAC deficiencies cannot be cured.

RESPECTFULLY SUBMITTED this 31st day of July 2026.

JULIE M. KRIEGH, City Attorney

By:  /s/ *Vanessa M. Tucker*
Vanessa M. Tucker
Assistant City Attorney
Benjamin J. Barr
Assistant City Attorney
*Attorney for Defendants City of Phoenix, Adrian Nicolas Ortiz Samaniego and Diego Santana*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sean A. Woods
Robert T. Mills
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

By:  *s/ Tanika D. Sherman*
4935-7905-5775, v. 2